## McELROY v. STATE.

### Opinion delivered January 13, 1913.

1. HOMICIDE—EVIDENCE.—In a trial of J for murder, evidence that F was indicted, tried and convicted of the same offense is incompetent and irrelevant and therefore inadmissible, not being original evidence because both indictment and conviction may have been based upon evidence insufficient to sustain them. (Page 135.)

2. SAME—SAME.—Testimony of a member of the grand jury as to statements made by a witness before the grand jury is secondary and hearsay and therefore imcompetent. (Page 135.)

3. TRIAL—ARGUMENT OF COUNSEL.—A statement in his argument by the assistant prosecuting attorney that no one had threatened to kill the deceased except the defendant is improper when not based upon nor warranted by the affirmative evidence in the cause. But such statement does not prejudice defendant's rights where the jury is admonished by the court not to consider the statement. (Page 136.)

4. SAME—SAME.—The prosecuting attorney has the right to appeal to the jury to do their duty in the punishment of crime, and a statement by him that "Mrs. Maggie Speer, widow of the deceased, was certain that the defendant had committed the crime and was the guilty person, and that she wanted him punished, and she looked to the jury to do their duty," is proper, when made within the record in the case. (Page 136.)

Appeal from Grant Circuit Court; *W. H. Evans*, Judge; affirmed.

*B. H. Vance Jr.* and *W. R. Duffie*, for appellant.

1. The evidence is not sufficient to sustain the verdict. Mere threats are not sufficient to sustain a conviction. 100 Ark. 344. Identification through the medium of the voice is not sufficient unless the voice itself, independent of extrinsic evidence, is at the time recognized. Where extrinsic evidence is a factor in the identification, it then becomes a mere conclusion of the witness, and inadmissible as opinion evidence. 20 S. W. 753; 34 S. W. 622; *Id.* 626; 98 S. W. 854; 96 S. W. 35; 63 Ark. 382.

2. It was erroneous to exclude the offered proof of threats against the deceased made by Fred McElroy, and that Fred McElroy committed the crime. It was competent for the purpose of showing that he in fact committed the crime and that appellant was not present and had no part in it. "Where the guilt of a defendant is shown by evidence which is largely circumstantial in its nature any testimony tending to show that some other person committed the crime is admissible." 100 Ark. 312.

*Hal L. Norwood*, Attorney General, and *William H. Rector*, Assistant, for appellee.

1. That the facts and circumstances in evidence are sufficient to sustain a conviction of murder in the second degree this court has already determined. 100 Ark. 311. The evidence—threats proven, Mrs. Speer's identification of the voice of the assailant and all the circumstances in proof tending to show appellant's guilt—is fully sufficient to sustain the verdict.

2. The court correctly excluded the evidence of threats made by Fred McElroy. 100 Ark. 344.

3. The argument of the prosecuting attorney and his assistant was legitimate and well within proper bounds. 100 Ark. 238, and cases cited.

WOOD, J. Joe McElroy was convicted at the August, 1912, term of the Grant Circuit Court of the crime of murder in the second degree and sentenced to the penitentiary for sixteen years. To reverse this judgment of sentence he appeals to this court. This is the second appeal. The case on first appeal is reported in 100 Arkansas Reports, at page 301, where the facts are stated, and the facts at the last trial were substantially the same as at the former trial.

On the night of January 28, 1911, Henry Speer, who carried on a small mercantile business at his residence in Grant County, was aroused about 9:30 o'clock by some one knocking on a post on his porch two or three times. Speer answered to let them know he was awake. His wife said to him, "That is some one disguising their voice." They knocked again. Speer asked them what they wanted and some one replied, "I want in the store to get a piece of tobacco." Speer got up lighted his lantern, went out of the door and just as the door shut behind him a gun fired.

Touching the identity of the defendant, Mrs. Maggie Speer testified as follows: "I have known the defendant for about five years. He came to the store very often and I waited on him part of the time. I was familiar with his voice. I thought at the time it was Joe McElroy's voice. It was a negro's voice or a white man in disguise. I can't say positively now who it was because it was dark and I didn't see him. The reason I thought it was Joe's voice was on account of threats I had heard he had made against my husband. Two weeks before that my husband told me that Joe had said he would not appear in suit as a witness against him. I also heard what he had said to Mr. Fenter about the grass being cut down, and I thought it was old Joe who had committed the crime."

In regard to the motive for the killing there was testimony to the effect that Joe McElroy and the deceased had trouble in August, 1909. McElroy was tried in the justice court and was discharged. Afterwards he traded at Speer's store until the alleged murder. He was afterwards indicted for an as-

sault and battery on Speer. One witness testified that about three days after the August, 1910, term of the Grant Circuit Court he heard Joe McElroy say, "That damned gander-legged Henry Speer got an indictment against me." Witness further testified that McElroy said Speer "was only driving tacks in his coffin," and that "if Henry Speer ever crossed him again or gave him any more trouble he would kill him;" and, further, "Joe McElroy said that his indictment would not amount to anything; that he didn't expect the prosecuting witness to appear against him."

Another witness testified that on Sunday morning before the killing he heard Joe McElroy say: "Here comes Speer. He thinks he is a cutter. The grass is growing green, and I don't know how soon it will be cut."

Another witness testified that he went to Joe McElroy's to collect an account of $5.00 which witness had before placed in Speer's hands for collection. He had a conversation with McElroy at his house on the day before Speer was killed that night, between 11 and 12 o'clock. He detailed the conversation as follows: "I asked him if he had settled his account. He began by saying that I would have gotten my money but inasmuch as I had placed it in Speer's hands I would not get it. He said that he and Speer had had trouble; that he was under bond for assault with intent to kill Henry Speer, but the damned son-of-a-bitch would never live to appear against him. He went on to say that it seemed like Henry Speer wanted to dominate over him. He said hard things about Speer."

Another witness testified that McElroy said, "People are putting themselves to a heap of trouble lately," that "Henry Speer had gotten a warrant and that he would not live to appear."

1. The above is substantially all the testimony upon which the State relies to sustain the verdict of the jury. Various other facts and circumstances were detailed in evidence, but the above is substantially all that tends to connect the defendant with the commission of the crime, and we think that it was a question for the jury under all the evidence as to whether the appellant committed the offense.

The facts developed in the present case were somewhat stronger even than the facts developed at the former trial,

and in the opinion in that case, on the evidence deveolped, we said: "There were other facts and circumstances adduced in evidence outside of these threats tending to connect the defendant with the commission of the crime."

Without-entering into details in setting forth all the evidence adduced on behalf of the State and the defendant it is sufficient to say that the question of appellant's guilt was one for the jury, under the evidence, and was submitted upon instructions of which no complaint is made.

2. The appellant offered to prove that Fred McElroy had been indicted for the killing of Henry Speer; that he had been tried and convicted of murder in the second degree and sentenced to twenty-one years imprisonment in the State penitentiary for the commission of that offense.

The appellant also offered to prove by members of the grand jury that one Hensley Crossland had testified before that body that he and Fred McElroy went down near the Speer residence; that Fred McElroy had a shotgun sticking down by his leg; and when they got near the Speer home Fred said he would go over there and give Speer a scare; that Fred had gone over there, and he, Crossland, heard a gun fire, and Fred came running back saying: "Trouble, trouble down there," and that Fred said to him that if he told it he would blow his head off, and that Joe McElroy was not present.

The court did not err in excluding this evidence. The indictment against Fred McElroy, and the verdict of the jury finding him guilty of the crime for which appellant has been convicted, and the judgment of the circuit court showing his conviction were not original evidence tending to show that Fred McElroy had committed the offense for which the appellant here has been convicted. The facts upon which the indictment and the conviction of Fred McElroy were had were not offered in evidence. Both the indictment and the conviction may have been based upon evidence that was entirely insufficient to sustain them. Indeed, on the appeal of Fred McElroy from the judgment of conviction against him we said: "The testimony is not sufficient to support the verdict." The testimony was therefore incompetent and irrelevant. The testimony of the witness Crossland before the grand jury was likewise incompetent. It was secondary

and hearsay evidence. The testimony was introduced in the trial in the case of *Fred McElroy* v. *State*, reported in 100 Ark. Rep. p. 344, and in that case we held that the testimony was improper for any purpose except that of contradicting witness Crossland, who was a witness in that case. Certainly such evidence should have no place as original evidence in this case, tending to show that Fred McElroy instead of appellant had committed the crime.

3. The assistant prosecuting attorney, in his argument to the jury, stated that no one else had threatened to kill Henry Speer except Joe McElroy. Objection was made to this argument, and the court admonished the jury not to consider this statement.

It was improper for the assistant prosecuting attorney to make a statement not based upon or warranted by the affirmative evidence in the cause. But we are of the opinion that this statement of the assistant prosecuting attorney was not calculated to and did not prejudice the rights of appellant in view of the admonition of the court not to consider the statement.

In his closing argument the prosecuting attorney stated that, "Mrs. Maggie Speer, the widow of the deceased, was certain that the defendant had committed the crime and was the guilty person, and that she wanted him punished, and she looked to the jury to do their duty."

These remarks of the prosecuting attorney, in his closing argument, were but the expression of his opinion as to the effect of Mrs. Speer's testimony, and also but an expression of his opinion to the effect that Mrs. Speer wanted the defendant punished, and that "she looked to the jury to do their duty."

The testimony of Mrs. Speer was before the jury, and they are presumed to have remembered it. The prosecuting attorney, in these remarks, was not undertaking to tell the jury what the testimony of Mrs. Speer was. He was not misstating her testimony or stating as a fact anything that she did not testify to. He was only, in effect, expressing his own belief as to her condition of mind concerning the perpetrator of the crime, as in his judgment was disclosed by the testimony. If he had stated that Mrs. Speer had told him

that she was certain that the defendant had committed the crime, then he would have been stating a fact and not merely expressing his opinion. If he had stated that Mrs. Speer had told him that she wanted the defendant punished, and had told him to tell the jury that she wanted the defendant punished and had asked him to express her wishes in this regard to the jury, then his statement would have been a statement of facts and not simply the opinion of the prosecutor himself. But a careful analysis of the language convinces us that the prosecuting attorney was doing no more than giving to the jury his own conclusion as to the effect of the testimony, and his own belief as to what Mrs. Speer desired that the jury should do. The jury heard the testimony and they could readily determine as to whether or not the prosecuting attorney was correct in his conclusion. We must assume that the jurors were conscientious and intelligent men, and as such we can not conceive how they could have been misled by the statement of the prosecuting attorney.

The testimony of Mrs. Speer did show that she believed that the appellant was the party who assassinated her husband, for she says: "I thought it was Joe's voice." If she believed that appellant was the guilty party it is but natural that she should have desired his punishment, and therefore the prosecuting attorney, in stating that that was her desire, did not go outside of the record in giving his opinion that such was her desire. He did not state a conclusion that was not fully warranted by the testimony.

Prosecuting attorneys certainly have the right, in the name of and for the peace and welfare of society in general, and of those who have been immediately and specifically injured by the commissoin of heinous crimes to appeal to the jury to do their duty in the punishment thereof. As was said by us in a recent case, "The remarks of counsel do not we believe, transcend the bounds of legitimate argument as marked out by many of the previous decisions of this court." *Bowen* v. *State,* 100 Ark. 232-238, and cases there cited.

The judgment is affirmed.