## FAKES *v.* STATE.

### Opinion delivered April 27, 1914.

1. CRIMINAL LAW—EVIDENCE—CARNAL ABUSE.—In a prosecution for carnal abuse, where the prosecutrix testified that defendant had had sexual intercourse with her, testimony of third parties that defendant had said that his wife was jealous of prosecutrix, is incompetent and irrelevant. (Page 592.)

2. EVIDENCE—RELEVANCY AND COMPETENCY—GENERAL OBJECTION.—A general objection is sufficient to raise the issue of the relevancy and competency of testimony. (Page 593.)

3. EVIDENCE—ADMISSION FOR SPECIAL PURPOSE—ADMISSIBILITY FOR OTHER PURPOSES.—Where incompetent testimony offered by plaintiff is permitted by the defendant to be introduced for the purpose of contradicting certain witnesses, it is error for the court, over defendant's objection, to admit the testimony for any other purpose. (Page 593.)

Appeal from Little River Circuit Court; *Jefferson T. Cowling,* Judge; reversed.

STATEMENT BY THE COURT.

Appellant was convicted of the crime of carnal abuse of the person of one Birdie Honnell, and appeals to this court.

Mr. Honnell, the father of the prosecutrix, died in August, 1911. Appellant was appointed guardian of the prosecutrix, who at first resided with her sister, and soon after appellant was appointed her guardian the prosecutrix went to his home to live with appellant and his wife. After she had lived with them twenty-two months, owing to a disagreement between the prosecutrix and appellant's wife, appellant took her and her younger sister to live with their sister in Little River County.

The prosecuting witness testified, in substance, that she was fourteen years old. The appellant had had sexual intercourse with her during the time she lived in his home ten or eleven times. The intercourse commenced the first month after she went to live with appellant, and continued until the witness went to live with her sister.

It was shown that after appellant had carried the prosecutrix and her little sister to live with their sister, Mrs. Broomfield, that he stated in the presence of Broomfield that no one could say that he had mistreated the girls, and that he also made the remark that they ''could ruin him if they were a mind to, but he believed they never would do it.''

A doctor testified that he had examined the prosecutrix in October, 1913, and found the hymen ruptured; found such a condition as he would expect to find if a woman had had intercourse.

Appellant testified, denying that he had had sexual intercourse with the prosecutrix, and denying the remarks attributed to him while he was at Broomfield's.

The appellant, after he was indicted and arrested on this charge, demanded that a physical examination be made of the prosecutrix, and he offered to prove that he demanded that such examination be made, but the court refused to admit such testimony.

The appellant offered to prove that immediately after the term of court at which he was indicted he insisted that the prosecutrix be required to undergo an examination by a competent physician to determine whether she had had sexual intercourse and permission to have such examination made was then refused.

Appellant was asked, on cross examination, the following question: "Didn't you state to Judge George, in the presence of Mr. Ed Jones, down here in the courthouse, that the reason you brought the children back down here was that your wife was jealous of the oldest girl?" Witness answered, "No, sir." A witness, Judge George, was then asked whether or not he (Fakes) "stated to him in the presence of Ed Jones, that his wife was jealous of the oldest girl?" The witness, over the objection of appellant, was permitted to answer that Fakes did state that his wife was jealous of himself and Birdie (meaning the prosecutrix). The appellant duly excepted to the rulings of the court.

A witness, Ed Jones, stated that in a conversation appellant had with Judge George he stated the reason he wanted to turn the little girls over to their relatives was that his wife was jealous of the older girl and it caused trouble between them. He also stated, in the same conversation, that this girl (the prosecutrix) would not obey his wife, and that his wife could do nothing with her.

In the opening argument, George Steel, specially employed counsel for the State, argued that Birdie Honnell was corroborated by Ed Jones and N. A. George in their statements as to Fakes' saying his wife was jealous of the older girl. Appellant objected to the argument on the ground that the testimony might be considered only for impeachment. In the closing argument for the State the prosecuting attorney also argued that the prosecutrix, Birdie Jones, was corroborated by the testimony of Jones and George. The appellant again objected, on the same ground as above, and excepted to the ruling of the court in overruling his objection to the argument.

Among other prayers for instructions appellant presented the following: "7. You are instructed that the evidence of Ed Jones and N. A. George should not be considered by you as in any manner tending to establish the guilt of the defendant in this case. It may be considered by you only for the purpose as it may tend to impeach

the defendant.'' The court refused to grant this prayer, and appellant duly excepted.

*Louis Josephs, James S. Steel, J. S. Lake* and *J. D. Head*, for appellant.

*Wm. L. Moose*, Attorney General, and *Jno. P. Streepey*, Assistant, for appellee.

Wood, J., (after stating the facts). 1. There was evidence to sustain the verdict.

2. The court erred in permitting the attorneys to argue, on behalf of the State, that the testimony of the witnesses, Jones and George, tended to corroborate the testimony of the prosecutrix. The prosecutrix testified that appellant had sexual intercourse with her. The testimony of Jones and George did not tend to corroborate the prosecutrix. As to whether or not appellant said that his wife was jealous of the prosecutrix, Birdie Honnell, was a matter wholly irrelevant to the issue being tried. The testimony was wholly incompetent for any purpose, and if the appellant had objected to its introduction the court should have excluded it. The appellant did not object, however, to the introduction of the testimony for the purpose of impeachment, and he would not be in an attitude to complain if the court had limited its consideration to that purpose. But the appellant, in his seventh prayer for instruction, did request the court to tell the jury that the testimony of the above witnesses should not be considered as tending to establish the guilt of the defendant, and requested the court to limit its consideration to the impeachment of appellant. The appellant did not make his objection to the argument, nor his prayer for instruction in regard to the testimony of these witnesses, as strong as the law warranted, but his objection to the testimony was specific enough to direct the court's attention to its prejudicial character, and therefore the court should have sustained his objection to the argument, and should have granted the prayer at least to the extent asked by appellant. Appellant should not be deprived of the benefit of the rule of law which does

not permit irrelevant and incompetent evidence for any purpose because he was willing that it might be considered for the one purpose of impeachment. Because appellant conceded more than he was bound under the law to concede is no reason why he should be deprived of the rule of evidence to which he was entitled. A general objection is sufficient to raise the issue of the relevancy and competency of testimony. *Vaughan* v. *State,* 58 Ark. 353-373.

As the testimony here was wholly irrelevant and incompetent, the court should not have permitted its consideration for any purpose to which appellant was not consenting. See *Clardy* v. *State,* 96 Ark. 52-57.

Appellant objected to other rulings of the court on prayer for instructions which we deem it unnecessary to review, for the reason that the errors complained of relate to mere verbiage, and no specific objections were made to these prayers. They will doubtless be corrected on another trial.

We find no prejudicial error in the rulings of the court except as above mentioned, but for this the judgment must be reversed and the cause remanded for a new trial.