WALKER *v.* STATE.

Opinion delivered May 12, 1919.

1. CRIMINAL LAW—REJECTION OF EVIDENCE—WAIVER.—Objection to the court's ruling in rejecting proffered testimony was waived where no exception was saved.

2. SAME—EVIDENCE—OPINION.—Testimony of a witness in a homicide case that he heard deceased make a statement indicating ill-feeling toward defendant was inadmissible, being merely the opinion of the witness that such statement indicated ill feeling.

3. SAME—HARMLESS ERROR—EXCLUSION OF EVIDENCE.—No prejudice resulted from refusing to permit a witness to testify whether he had heard deceased make statements indicating hatred toward defendant where he had previously testified that he had never heard deceased make any statements or intimations that he was going to do any harm to defendant.

4. SAME—EVIDENCE—LETTER.—In a homicide case a letter reflecting upon the character of defendant's daughter was inadmissible where no effort was made to prove that deceased had written the letter or that defendant suspected him of doing so prior to the killing.

5. SAME—ADMISSION OF EVIDENCE—OBJECTION.—The admission of evidence will not be reviewed on appeal if no objection was made or exception saved thereto.

6. HOMICIDE—EVIDENCE—COLLATERAL MATTERS.—In a homicide prosecution, testimony that defendant was angry at other persons than deceased because he believed that they were the authors of a letter reflecting on defendant's daughter was inadmissible where the State had introduced no evidence tending to prove that defendant had killed deceased because he suspected him of writing such letter.

7. HOMICIDE—HARMLESS ERROR—EXCLUSION OF EVIDENCE.—In a prosecution for homicide, the exclusion of evidence that prior to the killing that defendant had not suspected deceased of having written a letter reflecting on defendant's daughter was harmless.

8. SAME—EVIDENCE—MOTIVE.—Proof of motive is not essential to a conviction, but where established it tends to strengthen the case of the prosecution, while its absence is a circumstance favorable to accused.

9. CRIMINAL LAW—NONEXPERT EVIDENCE.—A nonexpert witness could testify to the mental condition of deceased in making a dying statement, after he had stated the facts upon which he based his opinion.

10. SAME—TRIAL—REMARKS OF COUNSEL.—The statement by defendant's counsel in argument that when he asked certain witnesses whether deceased or his wife had written a certain letter reflecting upon the character of defendant's daughter deceased's wife nodded her head so that the jury could have seen it was improper.

11. CRIMINAL LAW—REMARKS OF COUNSEL—ADMONITION OF COURT.—Where defendant's counsel during his argument made a statement of fact not supported by the testimony, upon the prosecutor's objection thereto, a facetious statement by the court that "you can't keep S. (defendant's attorney) from testifying with 40 log chains" was improper; the court should have reprimanded counsel and instructed the jury not to consider his remarks.

12. SAME—REMARKS OF COURT.—The statement of the court above quoted could not have been prejudicial to defendant.

13. HOMICIDE—RES GESTAE.—In a prosecution for homicide, testimony that defendant, after chasing deceased across the street, stated that he had followed deceased to prevent him from getting a club was not admissible as part of *res gestae.*

14. CRIMINAL LAW—EVIDENCE—RES GESTAE.—*Res gestae* are the acts talking about the act, and the words must stand in immediate causal relation to the act, unbroken by interposition of voluntary individual wariness seeking to manufacture evidence for itself.

15. CRIMINAL LAW—INSTRUCTION—GENERAL OBJECTION.—Error in the use of the word "proof," instead of "evidence," cannot be insisted upon on appeal where only a general objection was made.

16.  CRIMINAL LAW—INSTRUCTION.—An instruction containing the
    words "as the proof tends to show" was not objectionable as being
    on the weight of the evidence, since it is manifest that the word
    "proof" was used in the sense of "evidence."

Appeal from Clay Circuit Court, Eastern District;
*R. E. L. Johnson,* Judge; affirmed.

*John W. Brawner, W. E. Spence* and *S. R. Simpson,*
for appellant.

1.  There is much conflict in the evidence as to
who brought on the difficulty. It is apparent that de-
ceased was guilty of writing the objectionable letter
and was looking for trouble, but it does not appear that
defendant had any ill feeling towards deceased or in-
tended to draw him into the difficulty before the quarrel
in the courtroom. Under these circumstances malice
and ill-will of the deceased to show his state of mind
were competent and should have been admitted. 119
Ark. 58; 108 *Id.* 124; 55 *Id.* 603; 69 *Id.* 148; 76 *Id.* 494.

2.  The court erred in refusing to permit defendant
to prove the contents of the letter about his daughter
and in allowing proof by Walker of threats toward de-
ceased. He did not call deceased's name or indicate
whom he meant. 82 Ark. 60; 73 *Id.* 152; 52 *Id.* 304.

3.  Defendant should have been permitted to ex-
plain his mental condition and any threats or statements
made while he was mad and at whom he was mad.
16 Ark. 581; 71 *Id.* 117; 38 *Id.* 315-16.

4.  The court erred in examining the witness Har-
lan, indicating by questions asked the facts it wanted
to make plain to the jury, which amounted to a desire
to impress the jury with the truth of the evidence. 51
Ark. 147; 73 *Id.* 573.

5.  It was error to permit Harlan, a non-expert, to
give his opinion as to the mental condition of deceased
at the time of his so-called dying declaration. He was
not qualified as a non-expert. 119 Ark. 466; 120 *Id.* 303;
106 *Id.* 362; 66 *Id.* 494.

6. The court erred in making improper remarks to defendant's attorney while he was making his concluding argument to the jury. The remarks were highly prejudicial and the court made no ruling on the objection made. It was also error to permit defendant to prove that just immediately upon his returning from chasing the deceased across or nearly across a sixty-foot street, he said he followed him to prevent him getting a club. Defendant had just been assaulted and been struck a heavy blow. He had immediately run deceased across the street and had at once returned and walked back to near the place of the fight. Under the circumstances he could not have thought about a defense or anything that might follow anything he had just done. It is connected immediately with the transaction and should have been admitted as *res gestae.* 126 Ark. 337; 98 *Id.* 435; 43 *Id.* 99; 73 *Id.* 409; 66 *Id.* 500.

7. It was error to give instruction No. 16. 114 Ark. 498. It was erroneously copied from that case. The correct instruction appears as No. 15, on page 402 of 114 Ark. It is error to charge juries on the weight of the evidence. See 93 Ark. 320; 34 *Id.* 757. In this case the judge tells the jury that the evidence tends to show that defendant had a grudge against deceased—this was error. *Supra.* Without these objectionable statements there is no evidence of malice, ill will or hatred toward deceased until the difficulty that resulted in the fight. The court's instruction that "the evidence" tends to show a grudge against deceased was wholly unwarranted by the facts proven and contrary to the law. Cases *supra.*

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, and *T. W. Campbell,* Special Counsel, for appellee.

1. There was no error in reference to proof of ill will on part of deceased. The State objected to the questions asked Fred Russell, and the objections were sustained because there was no inquiry as to threats. But no objections were shown by defendant. 73 Ark.

407; 38 *Id.* 221; 39 *Id.* 221. No prejudicial errors are shown in admitting or rejecting evidence. Kirby's Digest, § 2605; 130 Ark. 365.

2. There was no error in refusing to admit the letter in evidence reflecting upon appellant's daughter. It was not shown that it was written by deceased or that he had anything to do with it, and it had no bearing on the case at issue.

3. There was no error in admitting proof of threats. After appellant denied making threats, it was proper to permit the State to prove threats, even though not directed specifically against deceased. 130 Ark. 101.

4. The court properly refused to permit witness Robbins to testify as to the condition of his wife, appellant's daughter. It was immaterial what caused defendant's anger if he was mad.

5. It was not error for the court to examine witness Harlan. 73 Ark. 573.

6. Nor was there any error in allowing Harlan to give opinion evidence. Non-experts may testify as to the mental and physical condition, weakness or strength of the person observed. 11 Ala. 731; 102 Ind. 138; 45 N. H. 148; 47 Iowa 16; 73 Cal. 7; 134 Mass. 198; 53 N. Y. St. 86; 38 Mich. 412; 30 Tex. 284.

7. There was no error in the remarks of the court to counsel for appellant. The bill of exceptions does not properly show the remarks, but the court merely stopped an improper line of argument on the attorney's part with a mild and humorous reprimand for improper conduct.

8. No error in refusing to permit appellant to prove what he said after the altercation with deceased as to his purpose in pursuing deceased. The statement was a self-serving declaration and no part of the *res gestae.* 69 Ark. 648; 1 Wharton on Ev., § 259; 57 Miss. 474; 110 Ind. 358.

9. No error in giving instruction No. 16. Only a general objection was made—no specific objection to any part of it. 74 Ark. 431; 94 *Id.* 169; 95 *Id.* 100; 66 *Id.*

264; 80 *Id.* 225; 116 *Id.* 357; 108 *Id.* 508; 106 *Id.* 362; 110 *Id.* 402; 129 *Id.* 180; 11 Nev. 30; 128 Cal. 83-88; 58 Kan. 805-8; 16 C. J. 953, § 2334; 111 Iowa 71; 153 Ind. 689; 103 Iowa 168; 61 *Id.* 369.

10. The record discloses no errors and the evidence makes a strong case of first degree murder, and appellant is fortunate to escape the death penalty.

WOOD, J. Appellant was convicted of the crime of murder in the first degree, for the killing of one J. C. Bryant, and was, by the judgment of the Clay County Circuit Court, sentenced to punishment at confinement in the State penitentiary for life.

There was evidence adduced by the State tending to show that on the 23rd day of December, 1918, appellant and Bryant were attending the trial of certain parties that was being conducted by a justice of the peace in a certain tin shop in the town of Piggott, Clay County, Arkansas. During the trial, appellant had a knife in his hand whittling.

One of the witnesses testified that he was in the house when Bryant and the appellant first went out on the walk. Appellant walked back a piece, and was talking to somebody. He didn't hear what he said, but heard Bryant says, "How do you know?" and the appellant said, "You come out here and I will show you." Bryant and the appellant went out of the front door, appellant in front and Bryant following at a distance of about six feet. Witness did not hear anything that occurred between them after they got out of the door. Bryant turned and went east, towards town, about fifty feet, stopped and came back. Witness then saw appellant going towards Bryant, he next saw Bryant running across the street and appellant after him. Witness "did not think either was mad at the time the remarks were made between them; did not think Bryant was mad but appellant seemed to be. Neither said anything that indicated that they were mad and about to fight."

Another witness testified that he saw Bryant and appellant going out of the house, and after they got out of the house he heard appellant say to Bryant, "I haven't got a damn thing, if you want me, get on me." Bryant started towards town and the next thing witness saw he was going back towards the tin shop. The next thing he saw Bryant was going backwards and the appellant was going towards him. Bryant made four or five steps backwards and appellant ran him possibly 35 yards.

Another witness stated that he heard the two men quarrelling after they went out of the house, but did not hear anything that was said. He heard the constable tell them to stop quarrelling or he would arrest them. After that he saw them going towards each other. Bryant had his overcoat on his left arm, which he dropped and squared himself and struck toward appellant. The appellant appeared to lean back or was knocked back, and straightened up and struck Bryant a sound lick with his right hand. Bryant struck the appellant about the neck on the right side and appellant struck Bryant, who immediately wheeled and ran.

According to other witnesses for the State, the appellant and Bryant were seen to go out of the house and after going out they were engaged in a dispute, each accusing the other of inviting him out, and daring the other to strike. The altercation at this point was interrupted by the constable, and Bryant went off a short distance in the direction of town, then turned back, whereupon the appellant said to him, "You are coming back to attend to me," and Bryant replied, "I have a right to go back to the courthouse."

One of the witnesses said, that about that time while Bryant was walking away, they renewed the quarrel and witness heard Bryant ask the appellant what he had against him, and the appellant replied, "Your wife's G—— d—— lies." Whereupon Bryant laid down his overcoat and struck appellant. Appellant threw up his arms and gave back from the lick to protect his face,

at which time the appellant must have cut Bryant, though witness did not see the lick.

The court admitted in evidence as the dying declaration of Bryant the following:

"Piggott, Ark., Dec. 23rd, 5 p. m., 1918.

"J. C. Bryant makes the following statement. On this day during the trial of Mrs. Annie Terry before Frank Underwood in Piggott J. M. Walker made several slurring remarks to me and about my wife who were here to be a witness in a similar case against Mrs. Russell and asked me to go out of the house and he would settle. I went out with him and he had his knife, I told him if he would put up his knife and come out and give me a fair fight I would fight him but could not fight a knife. The constable commanded the peace. I walked away but turned to go back Court House to get my wife when I went Pass Walker He cursted me and said you are comeing back to me I told him no—I was going back to the Court Room to get· my wife. He said your wife is nothing but a lying bitch and swore a lie on me. I then struck at him but he knocked off my lick and stabbed me and I ran away from him."

There was testimony tending to show that Bryant was a small man, about 5½ feet tall and weighing about 140 pounds, and that appellant weighed 170 pounds.

Witness C. N. Walker on behalf of the State testified without objection that on the morning of the day of the killing appellant asked him if he had heard about the trouble that his (appellant's) daughter was in in the neighborhood, and said, "I am going to kill a d—— s—— of a bitch either today or before this thing is over." Appellant did not say whom he was going to kill. He was talking about some stories that had been circulated about his daughter that reflected on her virtue.

There was testimony tending to prove that the knife, with which appellant killed Bryant, was an ordinary pocket knife, of two-inch blade in length and half inch wide with a keen point.

There was testimony tending to prove that after the trouble was over, the appellant, in telling about the fight, said ''he was not excited,'' that ''he did just what he meant to do.''

The testimony of the appellant tended to prove that there was trouble between the neighbors and appellant's only daughter from rumors or tales that were told that reflected on her and of which appellant had been informed. He was mad at this, but did not connect Bryant or his wife with the statement. He had no ill will or malice toward Bryant. His neighbors, Mrs. Terry, Mrs. Russell, and his daughter had been arrested on the charge of breach of the peace, and Mrs. Terry was on trial and he was in attendance. He had not, previous to the difficulty, said a word to Bryant that was in any way insulting or that was derogatory or reflected upon him.

The effect of the appellant's testimony, without setting the same out in detail, is that Bryant was the aggressor in the fight; that he invited the fight; that he did not want any trouble with him; that ''Bryant looked right straight'' at witness, and said, ''Walker, d—n you, I aim to kill you;'' that Bryant threw his coat off with his hand in his pocket; that witness was watching his left hand; that Bryant hit witness on the left side of the neck; that witness lost his balance and fell backwards, threw his knife up and struck as he fell; did not attempt to strike Bryant any more; that the cutting of Bryant was an accident; that Bryant started to run and witness chased after him a few steps to where there was a club lying in the road. Witness thought that he was going to get the club and chased him until Bryant passed the club, then witness turned back; that he did not intend to kill or seriously hurt deceased or cut him at all; had only struck to protect himself.

The testimony is voluminous and without setting it all out, the above gives the essential facts concerning the encounter, as the testimony may be considered from the viewpoint of the State and also of the appellant.

Appellant asked a witness, Fred Russell, whether or not Bryant in a conversation with the witness made "any statement, whatever, that indicated that he had any kind of malice or ill will towards Walker."

The State objected to the question, and the court sustained the objection, but the appellant did not except to the court's ruling.

Even if the above question were competent we could not review and reverse the ruling of the court in sustaining the objection to it, for the reason that the appellant did not follow his objection with an exception. "If a party does not follow the ruling on his objection by clinching it with an exception, he waives his objection." *Weisenheimer* v. *State,* 73 Ark. 407; *American Ins. Co.* v. *Haynie,* 91 Ark. 47; *McKinley* v. *Broom,* 94 Ark. 147-8.

The appellant asked another witness the following question: "State to the jury whether or not you heard him (Bryant) make any statement to indicate he had any ill feeling or malice or hatred toward this defendant." The court sustained an objection to the question, and appellant duly excepted to the ruling. Whereupon, counsel for appellant stated that he expected to show that the witness would have answered, "Yes." The appellant did not offer to show what statement Bryant made.

In the absence of proof of the statement itself tending to show malice or ill will, the question propounded and an affirmative answer thereto would show no more than that in the opinion of the witness Bryant had made a statement which showed that he harbored malice and ill will towards the appellant. But the opinion of a witness in matters of this kind could not be received as evidence of the fact. Nor would the trial court in the absence of any statement made by Bryant be able to determine whether or not the statement, if made, was prejudicial to appellant's rights. See *Fowler* v. *State,* 130 Ark. 365.

Before the above answer was propounded the trial court had permitted the witness, in answer to a question

propounded by counsel for appellant, to answer that he had never heard Bryant "at any time or place make any threats, statements, or intimations, whatever, that he was going to do any harm, fight, or kill, or do any injury" to appellant. Appellant, therefore, does not make it appear that there was any prejudice in the ruling of the court.

About six weeks before the killing, appellant's son-in-law, Robbins, received a letter reflecting upon the virtue of his wife, appellant's daughter. The court refused to permit appellant to prove the contents of this letter.

There was no attempt upon the part of the appellant to prove that Bryant wrote the letter or that the appellant even suspected that he had any connection with the letter prior to the time of the killing. On the contrary, the appellant himself testified that he did not connect Bryant in any way with the rumors or the information that he had received calling in question the virtue of his daughter. The letter, therefore, could not have thrown any light upon the question as to the motive of the parties to the rencounter, and was wholly irrelevant.

While appellant was testifying, he was asked by the attorney for the State on cross-examination the following question: "Did you go right to old man Walker's restaurant and say to him, 'I am going to kill a d——— s——— of a bitch today?'" The appellant answered, "No, sir, I did not."

Other questions asked show that the above question had reference to the day of the killing.

Counsel for appellant contends in his brief that the court erred in permitting the State to prove by Mr. C. N. Walker that the appellant, on the day of the tragedy, stated that "he was going to kill a d——— s——— of a bitch, either today or before this thing is over with." The record does not show that the appellant objected to this testimony or saved exceptions to the ruling of the court in admitting the same. The alleged error, there-

fore, is one that we cannot review.   See *Harding* v. *State,* 94 Ark. 65.

The appellant contends that the court erred in refusing to permit witness Robbins to testify concerning the physical condition of his wife, appellant's daughter; that appellant had been shown the letter which reflected on the virtue of his daughter; that appellant's daughter and the wives of two of his neighbors had become embroiled in a quarrel, which had resulted in their arrest and for which they were being tried on the day of the killing; that appellant's daughter had plead guilty; that appellant did not accuse Bryant or his wife of having written the letter, but that after the killing appellant learned that Bryant and his wife were the authors of the letter.

The above testimony was irrelevant and inadmissible. These were all collateral issues and the court correctly ruled in limiting the evidence to the issue involved, namely, as to whether or not the appellant had killed Bryant after premeditation and deliberation, and with malice or forethought, as charged in the indictment. The State had introduced no evidence tending to prove that the appellant had killed Bryant because he suspected the latter as being the author of the letter, which traduced the character of his daughter.  In the absence of such testimony on behalf of the State, testimony to the effect that appellant was angry at other persons, because he believed that they were the authors of the letter, and that he had no ill will towards Bryant, growing out of the writing of the letter, was irrelevant and incompetent.

It occurs to us that the ruling of the court in excluding any testimony tending to prove that the writing of the letter did not furnish a motive for the killing of Bryant was more favorable to the appellant than otherwise.  He was not prejudiced as we see it by the exclusion of this testimony and therefore is not in an attitude to complain.  If testimony had been adduced to the effect that Bryant was the author of the defamatory letter concerning appellant's daughter, written six weeks

before the killing and that appellant so believed and
harbored ill will and malice towards Bryant on that
account, it would have strengthened the case for the
prosecution, because it would have tended to show a
motive for the killing. "While proof of motive is not
essential to a conviction, yet, where it is established, it
tends to strengthen the case for the prosecution, and, on
the other hand, the absence of motive is regarded as a
circumstance favorable to the accused." *Stokes* v. *State,*
71 Ark. 117.

Witness Harlan identified a written statement which
was introduced in evidence as the dying declaration of
Bryant. Counsel on both sides examined the witness
with respect to the circumstances under which this decla-
ration was made and reduced to writing. The court then
propounded to the witness certain questions which were
designed to elicit from the witness information as to the
mental condition of Bryant when the writing was being
read, so as to enable the court to determine the question
of the competency or incompetency of the evidence. We
find nothing in the questions that could be construed as
an opinion of the court, or an intimation by the court to
the jury on any fact which it was necessary for them to
decide.

Witness Harlan, over the objection of the appellant,
was permitted to testify that Bryant, at the time the
written statement was read to him "was in a weak con-
dition," but as witness believed "was mentally at him-
self." Appellant objected to this testimony on the
ground that the witness had not qualified as an expert.
The issue involved was not such as could be determined
only by the opinion of experts. It was competent for
non-experts to testify as to the mental or physical condi-
tion of Bryant at the time the alleged dying declaration
was made by him. The examination of the witness in
detail, which it is unnecessary to set forth, shows that he
had stated the facts before giving his opinion as to the
mental capacity of Bryant. This was sufficient to bring
the testimony within the rule allowing non-experts to be

admitted on the issue of sanity or insanity, where they state the facts upon which their opinion is based. See *Hankins* v. *State,* 133 Ark. 38-63, and cases there cited.

Counsel for appellant in his argument to the jury said, "When I asked certain witnesses whether or not the deceased or his wife wrote the letter about defendant's daughter, the wife of the deceased, who sat behind the prosecuting attorney, nodded her head so the· jury could have seen it." The special prosecuting attorney objected.

Counsel for appellant repeated the statement and said that it was true. The special prosecutor again objected, saying, "I don't want Mr. Simpson to testify." The trial judge, thereupon, said, in the presence and hearing of the jury, "You can't keep Simpson from testifying with forty log chains."

The record shows that the above remarks made by counsel for the appellant were not predicated upon any facts adduced in evidence, but were made by the attorney for appellant while arguing the details of offered testimony concerning the letter, which the court had not admitted as evidence.

The trial judge, as the record discloses, upon objection being made to the argument, "remarks in a facetious way, not intending it in any other way," that "it would be impossible to hold Mr. Simpson in the record with 16 log chains," and "permitted him to proceed with the argument just as he desired, and to say whatever he desired to say, notwithstanding the prior ruling of the court."

This whole proceeding was improper. The trial court, instead of allowing the argument to proceed with the facetious comment upon the conduct of the attorney in making it, should have promptly reprimanded counsel when he first began the improper argument and should have instructed the jury not to consider the same.

The most serious business that could possibly engage the attention of our circuit courts is the conduct of trials involving life and liberty. Therefore, it is the duty of

the presiding judge at such trials to see that nothing is said or done which is calculated to disturb the solemnity of the proceedings, to detract from the dignity of the tribunal and to distract the minds of the jury, as a part of it, from the importance of the function which they are to perform. The trial court has plenary power to compel the attorneys of the parties to observe the well-established rules for the production of evidence. If attorneys violate these rules by attempting to supply in argument, what they have failed to prove by testimony, the court cannot correct the error, where the rights of either party are prejudiced, by a facetious reference to the disposition of counsel to transcend the bounds of legitimate argument. The duty of the court is to prevent the argument, if possible, or, if already made, to reprimand or punish counsel for making it; to instruct the jury not to consider it, and, in short, to do everything that can be done to see that the verdict of the jury is in no manner produced or influenced by such argument. ''Whenever it occurs to us that any prejudice has most likely resulted therefrom, we shall not hesitate to reverse on that account.'' *Vaughan* v. *State,* 58 Ark. 353-68. But here, as the record discloses, the court permitted counsel for appellant to proceed with the argument ''just as he desired, * * * and            ᴠ�˥ proceeded with his argument just as if the objection of the prosecuting attorney had never been made.'' It is inconceivable that the appellant could have been prejudiced by the remarks of the court concerning appellant's counsel. It is easy to see that the State might have been prejudiced by the argument of the appellant's counsel, but appellant had no ground to complain, for the statement by his counsel of fact, outside of the record, was made solely for his benefit and the remarks of the court made in humorous vein, as the record shows, could not have been prejudicial to appellant. At most it could only have been considered as but a mild rebuke to counsel for going out of the record, but the remarks of counsel were not excluded.

There was no error in the ruling refusing to permit a witness to testify that appellant said, immediately upon his return after chasing Bryant across the street, that "he followed him to prevent him from getting a club." This declaration by the appellant was not a spontaneous emanation growing out of the act of stabbing Bryant. The fight was then over and although but a few moments had passed, appellant had had time to reflect and the declaration under the circumstances was in the nature of a self-serving declaration and it could not be properly considered as a part of the *res gestae.* "*Res gestate* are the acts talking for themselves, not what people say when talking about the act. In other words, they must stand in immediate causal relation to the act—a relation not broken by the interposition of voluntary individual wariness seeking to manufacture evidence for itself." 1 Whart. Ev., Sec. 259; *Elder* v. *State,* 69 Ark. 648-52; *Baker,* v. *State,* 85 Ark. 300; *Spivey* v. *State,* 114 Ark. 267; and other cases cited in 2nd Crawford's Digest, section 88.

Counsel for appellant contend that the court erred in giving instruction No. 16.*

It is insisted that the words "as the proof tends to show" was the expression of opinion by the court on the weight of the evidence.

One witness testified that he heard appellant say just after the killing that he was not excited but did just as he aimed to do, and Bryant in the dying declaration said that appellant had been tantalizing him and using abusive language to him at various times during the day.

_____

*Instruction 16 was as follows: "If the defendant entertained a grudge against the deceased, Bryant, as the proof tends to show, and used language in the hearing of Bryant for the purpose of provoking him to anger, and causing him to bring on an attack whereby the defendant might have the opportunity of killing him, or doing him great bodily injury, then defendant would not be excused or justified in the killing, and would be precluded from claiming the right of self-defense, until he had, in good faith, withdrawn from the combat as far as he could, and had done all in his power consistent with his safety to avoid the danger and avert the necessity of the killing."—(Rep.)

This testimony tends to prove that appellant (to use the language of the instruction) "entertained a grudge against the deceased."

Now the word "proof" in a strictly accurate and technical sense "is the result or effect of evidence, while evidence is the medium or means by which a fact is proved or disproved." But the words "proof" and "evidence" are so frequently used interchangeably and synonymously by the best legal writers as to warrant such use of them, especially where the attention of the court is not specifically directed to the real difference in their meaning by an objection calling for the distinction to be made. See Jones on Ev., p. 4, section 4; Best on Ev., section 10; Words and Phrases, Vol. 3, p. 2522-23; Vol. 6, p. 5684-5, and cases cited.

It is manifest from the context that the court used the word "proof" not in its strict legal sense but in its ordinary acceptation when used as a synonym for "evidence." The court doubtless would have used the words "as the evidence tends to prove" instead of the words "as the proof tends to show," and would have so corrected the instruction if its attention had been called to it. Counsel under a general objection could not predicate error upon the ruling of the court in giving this instruction. *Sons* v. *State,* 116 Ark. 357; *Teel* v. *State,* 129 Ark. 180, and other cases cited in the State's brief.

The court in another instruction told the jury that they were the "sole judges of the weight and sufficiency of the evidence and the credibility of witnesses." So it is clear that the court did not mean, by use of the language to which objection is here urged specifically for the first time, to express an opinion on the weight of the evidence. The court intended merely to tell the jury that there was evidence tending to prove a certain fact, and to leave them to ascertain whether that fact was proved. The language of the instruction when thus construed does not invade the province of the jury, as has been determined by our own court as well as the courts of other jurisdictions. See *Edmonds* v. *State,* 34 Ark. 754;

*Hogue* v. *State,* 93 Ark. 316-20. Cases in other jurisdictions to the same effect are cited in the Attorney General's brief.

The record does not disclose any errors in the rulings of the trial court prejudicial to the rights of the appellant.

The judgment is, therefore, affirmed.

SMITH, J., dissenting.