Charlie WILLIAMS *v.* STATE of Arkansas

CR 87-142                    742 S.W.2d 932

Supreme Court of Arkansas
Opinion delivered January 25, 1988

*G. B. "Bing" Colvin III*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant was charged and convicted of first degree murder pursuant to Ark. Stat. Ann. § 41-1502 (Repl. 1977) (Ark. Code Ann. § 5-10-102 (1987)) and sentenced to forty years imprisonment. For appeal he argues: (1) the insufficiency of the evidence to support a conviction for first degree murder and (2) that the trial court erred in failing to grant a mistrial due to prosecutorial misconduct. Although we find the conduct on the part of the prosecutor to be unprofessional and below the standards expected of a state's attorney, we find such misconduct did not prejudice the appellant.

There was no eyewitness to the homicide except the appellant; therefore, the case must stand or fall on circumstantial evidence. The uncontradicted testimony by several witnesses, including the appellant, discloses that the appellant and his daughter, Rosalee, had a serious argument a few hours before the homicide caused in part by Rosalee's relationship to a man named Leonard Jordon, also referred to as "Lenon" and "Puddin." Rosalee was told by appellant to get her clothes out of his house. When Jordon came to appellant's residence to help Rosalee pick up the balance of her clothing appellant threatened to "blow his head off" and told Jordon not to come back. According to the appellant's testimony, Jordon stated words to the effect that he would not be back but somebody else would.

The appellant watched them move his daughter's property to a house down the street where a person named James Earl Ford resided. Appellant observed them put his daughter's clothes in the back of an automobile and he saw James Earl Ford leave the premises with the property and Rosalee and Jordon. It was almost dark at that time but the houses were only a short distance apart and visibility was still fairly good. The appellant testified that he

saw Ford return to his residence. Meantime, the appellant had tried to borrow his father's pistol to go outside to look for a "possum" in the chicken house. The father refused to allow the appellant to take his handgun outside and thereafter the appellant took a 30.06 rifle and went out by the chicken house.

The appellant saw Ford leave his residence with a gun in his hand and come toward the appellant's residence. It was dark by this time. Obviously there was some type of outside lighting in the area. The evidence shows that Ford had a headlight strapped to his head and that he was going rabbit hunting. The appellant, who gave several versions of the homicide, indicated that he knew the man approaching his house was Ford and that he thought that Ford was coming to get him on behalf of Rosalee. Other times appellant testified he didn't know who it was. In his statement to the police he said he didn't know who was coming to get him but he thought it was Leonard Jordon.

According to appellant's testimony, Ford ran up to near the property line of the appellant and slowed down, at which time the appellant, who was behind a big tree, called, "What are you looking for?" Appellant stated that Ford either called out, "You over there in the dark, what are you over there looking for?" or, "Where in the hell is you?" After this exchange the appellant stated he eased up to the back door and said, "Here I am." According to him the other party stated either, "I come to burn your goddamn ass," or "I have come to load you up." After this exchange of words, appellant claimed Ford started aiming his shotgun at him; so, appellant fired his gun in self-defense.

The physical evidence shows that the shot entered the side of Ford's head and killed him. Ford's body was found in the street near the appellant's residence with the shotgun beneath it and the safety on.

During the closing argument Prosecutor John Frank Gibson apparently referred to one of the appellant's statements given to the chief of police to the effect that, "I didn't know who I was shooting at but I thought it was Puddin, Lenon Jordon." The prosecutor then addressed the jury as follows:

Mr. Gibson: "I asked you for forty years plus fifteen years. If you want to give him life o.k. if your disagree with me,

say no, we can't go more than second degree murder. Twenty plus fifteen. The man is dangerous. He hasn't even killed Puddin yet.

Mr. Colvin: Your Honor, I object to the statement.

Mr. Gibson: Your Honor, he said he intended to kill Puddin.

Mr. Colvin: I object to it because of the fact that there is no evidence that he intends. And it is an implication that there is going to be another death in Dermott if this jury lets him go and I demand that that man be shut up on that kind of statement right there because that is totally uncalled for.

Court: Well, now here is what my ruling is, Mr. Gibson.

Mr. Gibson: It is in the statement.

The Court: The Jury has heard the testimony. They have heard whether or not anything was said about that. Therefore, they will have to make their ruling on what they heard, not what the counsel said.

Mr. Gibson: Can I argue it, Your Honor?

Court: No, sir.

Mr. Gibson: Your Honor, I heard him testify, by his statement there that he intended to kill Puddin.

A little later Gibson stated, "Well, Your Honor, you are sitting there commenting on my argument. I feel like if I hear testimony came from a witness that the Defendant intended to kill somebody, I want to remind the jury of it." Gibson went on again to repeat, "I wanted to remind them that he hasn't killed Puddin yet." After repeating this tactic three or four times the prosecutor then apologized and sat down. The appellant's motion for a mistrial was overruled.

■ We first consider the chief argument by appellant that the evidence was insufficient to show that he killed James Earl Ford with deliberation and premeditation as is required by Ark. Code Ann. § 5-10-102 (1987). On appellate review, this court reviews the evidence in a light most favorable to the state to determine whether the verdict is supported by substantial evi-

dence. *Williams* v. *State*, 289 Ark. 69, 709 S.W.2d 80 (1986). Evidence is substantial if the jury could have reached this conclusion without having to resort to speculation or conjecture. *Williams* supra.

There was substantial evidence before the jury that appellant deliberately with premeditation shot James Earl Ford because he thought Ford was siding with Jordon or because he mistook Ford for Leonard Jordon. Appellant testified he saw Ford leave with Jordon and his daughter, come back, and then set out for his house with a gun in his hand. Appellant told the police right after the shooting that he thought the man he shot was Leonard Jordon.

The evidence clearly shows that the appellant shot and killed Ford in the street near where appellant lived. It was dark and the appellant had first hid behind a tree and then eased up near his own backdoor before the fatal shot was fired. The appellant's own words clearly reveal he was not firing in self-defense. No doubt it took several minutes for Ford to get from his own residence up to the residence of the appellant which was plenty of time for appellant to form the intent to commit murder. He was hiding in the dark when Ford came along and need not have said anything in order to avoid a confrontation.

Even though there were no eyewitnesses to the killing, the jury had the right to resolve the evidence by not believing the appellant's account of the shooting. *Girtman* v. *State*, 285 Ark. 13, 684 S.W.2d 806 (1985). There was testimony that Ford was going rabbit hunting. Ford's shotgun and headlight were appropriate for rabbit hunting and his shotgun was found underneath his body with the safety still on.

The second point is more complex. There was no testimony at the trial that the appellant intended to go back and kill Jordon later. There was no testimony or other evidence that he intended to kill anybody else in the future. There simply was no basis in the record for the prosecutor to make the statements he made.

We have on numerous occasions dealt with closing arguments of overzealous prosecutors. In *Williams* v. *State*, 259 Ark. 667, 535 S.W.2d 842 (1976), in a unanimous opinion we stated:

Closing arguments must be confined to questions in issue,

the evidence introduced and all reasonable inferences and deductions which can be drawn therefrom. *Simmons* v. *State*, 233 Ark. 616, 346 S.W.2d 197. Whenever trial counsel argues matter that is beyond the record and states facts or makes assertions not supported by any evidence that are prejudicial to the opposite party, there is clearly error. *Walker* v. *State*, 138 Ark. 517, 212 S.W. 319; *McElroy* v. *State*, 106 Ark. 131, 152 S.W. 1019; *Willyard* v. *State*, 72 Ark. 138, 78 S.W. 765; and *Fakes* v. *State*, 112 Ark. 589, 166 S.W. 963.

When objection is made, the presiding judge should appropriately reprimand counsel and instruct the jury not to consider the statement, and in short, do everything possible to see that the verdict of the jury is neither produced nor influenced by such argument. *Walker* v. *State*, supra. The failure to sustain a proper objection to argument of matters not disclosed by the record is serious error, because it gives the appearance that the improper argument has not only the sanction but the endorsement of the court. *Miller* v. *State*, 120 Ark. 492, 179 S.W. 1001; *Hays* v. *State*, 169 Ark. 1173, 278 S.W. 15; *Elder* v. *State*, 69 Ark. 648, 65 S.W. 938. It has even been said that the overruling of a proper objection to a statement amounting to a declaration of law is tantamount to the giving of an instruction to that effect.

■ A trial judge has wide discretion in control of arguments to the jury, but there is a limit to his discretion. *Holcombe* v. *State*, 203 Ark. 640, 158 S.W.2d 471 (1942). We have stated that we will always reverse a case where counsel goes beyond the record and states facts that are prejudicial to the opposite party unless the trial court by its action has removed such prejudice. *Adams* v. *State*, 176 Ark. 916, 5 S.W.2d 946 (1928). Failure of the trial court to exercise such discretion calls for reversal. *Hays* v. *State*, 169 Ark. 1173, 278 S.W. 15 (1925).

■ This court has repeatedly held over the years that a prosecuting attorney acts in a quasi-judicial capacity and he has a duty to use all fair, honorable, reasonable, and lawful means to secure a conviction of guilty in a fair and impartial trial. However, the desire to obtain a conviction is never proper

inducement to include in closing arguments anything except the evidence in the case and legitimately deducible conclusions from the applicable law. *Mays* v. *State*, 264 Ark. 353, 571 S.W.2d 429 (1978). We have stated, "Basically, the rule rests upon that spirit of fair play which, perhaps more than anything else, distinguishes Anglo-American law from the jurisprudence of other nations." *Simmons and Flippo* v. *State*, 233 Ark. 616, 346 S.W.2d 197 (1961). A finding of guilt should therefore only rest upon legitimate proof in the record and not upon efforts to persuade or appeal to the jury by arguing things which were not presented. *Simmons, id.*

It is a serious matter when an attorney attempts to appeal to the prejudice of the jury by arguing matters outside the record. However, we usually defer to the trial court in the exercise of its discretion in such matters. The trial court is in superior position to determine the possibility of prejudice, and to observe the mannerisms, expressions, and demeanor of the parties in determining whether to grant a mistrial. The decision of whether to grant a new trial is discretionary with the trial judge and will not be reversed on appeal in the absence of a showing of abuse of discretion or manifest prejudice to the accused. *Vasquez* v. *State*, 287 Ark. 468, 701 S.W.2d 357 (1985). *Harvey* v. *State*, 261 Ark. 47, 545 S.W.2d 913 (1977).

Admittedly the prosecutor's statements were improper. However, we think the effect of the action taken by the trial court was to inform the jury that the argument presented by the prosecutor was not in evidence and could not be considered by them. Obviously, the best course of action would have been for the trial court to immediately reprimand the prosecutor in front of the jury.

We consider misconduct on the part of counsel on the facts of each case. What is prejudice in one case might not be in a similar case. There is no indication in the present case that the verdict was attributed to or was in any manner influenced by the prosecutor's improper argument. The appellant was convicted of first degree murder and received a sentence of forty years. He could have been given a life sentence. In spite of the improper argument by the prosecutor we do not find prejudice to have resulted under the facts of this case. See *Floyd* v. *State*, 278 Ark.

342, 645 S.W.2d 690 (1983) and *Henderson* v. *State*, 281 Ark. 406, 664 S.W.2d 451 (1984). A prosecutor who conducts himself in such a manner runs the risk of costing the state and county a retrial or even the possibility of allowing a guilty person to escape punishment. We strongly discourage such conduct on the part of either counsel. However, under the facts of this case, we cannot say that the trial court abused its discretion in continuing with the trial.

Affirmed.

HAYS and GLAZE, JJ., concur.

STEELE HAYS, Justice, concurring. I disagree with that part of the court's opinion which chastises the prosecutor for arguing that the defendant hasn't killed "Puddin" yet. The majority opinion declares there was "simply no basis in the record" for the prosecutor's remarks. I take exception. The Dermott police chief testified that the defendant told him at the scene that he intended to kill "Puddin," whom he did not like, but in the dark mistook James Earl Ford, whom he did like, for "Puddin."

Whether that testimony gave rise to an inference that the defendant posed a threat to "Puddin" was for the jury to weigh, but it was not inappropriate, as I see it, for the prosecutor to argue what he believed to be consistent with the trial testimony. It is the role of counsel, in this instance the prosecutor, to urge such inferences to the jury as he thinks are sustained by the evidence. Only when such remarks are clearly without basis should the argument be labelled "improper." The trial court's handling of the issue in denying a mistrial and instructing the jury to decide the case on the testimony, rather than the argument, was a proper handling of the matter and we should, I believe, let it rest there.

GLAZE, J., joins.