MISSOURI, KANSAS & TEXAS TRUST CO. *vs.* NEIL MCLACHLAN *et al.*

Argued Dec. 13, 1894.   Affirmed Dec. 21, 1894.

No. 8955.

**Finding supported by the evidence.**

The evidence *held* sufficient to justify a finding that a contract was usurious.

**Loan usurious, although payment is contingent.**

Where there is a loan of money, the mere fact that the contract for its repayment is in form contingent will not exempt the transaction from the taint of usury if the contingency thereof is not real, but colorable, and a mere device to evade the statute.

Appeal by plaintiff, the Missouri Kansas and Texas Trust Company, from a judgment of the District Court of St. Louis County, *J. D. Ensign*, J., entered May 19, 1894, that it take nothing by this action and that its mortgage be canceled.

On June 3, 1890, defendant Neil McLachlan made application to plaintiff to borrow of it $9,000 to be secured by mortgage on lots 101, 103, 105, 107, and 109, in block 34, Third Division addition in Duluth, owned by his wife, and providing that in case of his death before full repayment the unpaid portion of the debt should lapse and be extinguished.    Plaintiff accepted the application and on June 30, 1890, loaned to him the $9,000 and he made and delivered to it ten promissory notes each for $1,620 bearing no interest, but $13.50 of the principal of each note fell due on the last day of each and every month for ten years thereafter, making 120 payments of $135 each in full of the ten notes.    He and wife made a mortgage to plaintiff on the lots securing the notes.    It contained a provision as follows:

"And it is further understood and agreed, by and between the said parties of the first part, their executors, administrators or assigns, and the said party of the second part, the Missouri, Kansas & Texas Trust Company, that in case said Neil McLachlan, one of said parties of the first part, should die after the execution and delivery of the said notes and this mortgage, and within ten

years thereafter, each and every of said notes remaining unpaid at the said date shall be surrendered to the executors or administrators of the said Neil McLachlan, one of the said parties of the first part, and this mortgage shall be cancelled and satisfied; provided, however, that said parties of the first part have promptly paid each monthly installment which shall have become due prior to his death, according to the terms of said notes hereinbefore mentioned, and that he has not committed suicide within two years, and has not, without written consent of the said party of the second part, visited the torrid zone or personally engaged in the business of blasting, mining or submarine operations, or in the manufacture, handling or transportation of explosives, or entered into the service of any railroad train, or on a steam or sailing vessel, for two years."

McLachlan paid the first nine monthly installments on the ten notes, but neglected to pay anything more. On April 10, 1893, plaintiff under a clause in the mortgage declared the whole debt due and commenced this action to foreclose the mortgage, claiming but $10,260. The defendants, McLachlan and wife, answered that plaintiff is a Missouri corporation and had not complied with 1878 G. S. ch. 34, Title 6, regarding foreign corporations doing life insurance business in this state. They also answered that by the notes and mortgage a greater rate of interest than ten per cent a year was secured upon the $9,000 loaned and asked that the securities be adjudged usurious and void, that the notes be surrendered and the mortgage canceled of record. Plaintiff replied and the issues were tried in March, 1894. Defendants proved that indemnity to the amount loaned for the given time upon the life of Neil McLachlan was worth and could be obtained for $852.91 and that plaintiff actually obtained such indemnity and paid that sum for it. Findings were made and judgment entered that the securities were void for usury and directing that they be surrendered and the mortgage canceled of record. Plaintiff appeals.

*White & Hewit*, for appellant.

To obtain cancellation for usury defendants must show by competent evidence, and not by mere argument or inference that the

contract sought to be avoided is in fact usurious and unlawful, such as is prohibited by the statute. The burden of proof is upon him, and with every presumption in favor of the validity of the con-tract.

To make a contract usurious four elements must enter in: *First*, there must be a loan of money; *second*, an agreement between the parties that the money shall be repaid at all events; *third*, the payment or agreement to pay for the forbearance of the money loaned a greater rate of interest than is allowed by law; and, *fourth*, the intent to take more than the lawful rate of interest. *Spain* v. *Hamilton's Adm'rs*, 1 Wall. 604.

We believe that no case will be found in the books which does not clearly stipulate that the second essential as above stated must exist in order to constitute usury. It is not enough that the borrower intended to make a usurious agreement, but the intention to take the usury must have been in the full contemplation of both parties to the transaction. There must be an *aggregatio mentium*. *Condit* v. *Baldwin*, 21 N. Y. 219; *Lloyd* v. *Scott*, 4 Pet. 205.

Counsel and court have based their conclusion that there is usury in this case on mathematical calculation by which they claim that too much money was paid for the guaranty of perpetual forbearance in case of McLachlan's death. But this was insufficient to prove usury. It might be a link in a chain, but it cannot make a chain unless other links are added. *Battles* v. *Laudenslager*, 84 Pa. St. 446; *Coles* v. *Trecothick*, 9 Ves. 234; *Franklin* v. *Osgood*, 2 John. Ch. 1; *Marksbury* v. *Taylor*, 10 Bush, 519; *Lavassar* v. *Washburne*, 50 Wis. 200; *Bryan* v. *Hitchcock*, 43 Mo. 527; *Bowen* v. *Evans*, 2 H. L. 281; *Christmas* v. *Spink*, 15 Ohio, 600.

If the defendant had paid a one hundred and twentieth part of the loan, viz. $75 each month and interest at ten per cent on the principal remaining in use, the plaintiff would have received in the ten years principal and interest $13,537. This is $2,663 less than the $16,200 secured. If Neil McLachlan had died at any time during the ten years the whole of the unpaid principal and interest would have been lost to the plaintiff under the agreement. This agreement was valuable and was thought by him to be worth the sum of $2,663.

*J. B. Richards,* for respondents.

The contract is usurious. Plaintiff knowingly exacted from Mc-Lachlan $1,810.09 more than he was entitled to for the consideration given. The principal, $9,000 and interest at ten per cent per annum computed on the mode of payment provided in the contract amounts to $13,537 and the real worth of the guaranty or insurance agreement was $852.91. Plaintiff well knew this fact when the contract was made. The sum of these is $14,389.91; whereas, plaintiff knowingly exacted notes for $16,200, an illegal profit of $1,810.09. These facts prove usury, as was found by the trial court. *Holmen* v. *Rugland,* 46 Minn. 400; *Missouri Valley Life Ins. Co.* v. *Kittle,* 2 Fed. Rep. 113; *National Life Ins. Co.* v. *Harvey,* 7 Fed. Rep. 805; *Doe* v. *Barnard,* 1 Esp. 11; *Boldero* v. *Jackson,* 11 East, 612; *Knickerbocker Life Ins. Co.* v. *Nelson,* 78 N. Y. 137; *Quackenbos* v. *Sayer,* 62 N. Y. 344; *Schroeppel* v. *Corning,* 5 Denio, 236; *Fiedler* v. *Darrin,* 50 N. Y. 437.

Only a fair preponderance of evidence is required to show usury. *Lukens* v. *Hazlett,* 37 Minn. 441.

The test of usury is, will the contract, if performed, result in securing to the lender a greater than lawful compensation for the use of money. *Smith* v. *Parsons,* 55 Minn. 520.

The contract is one of life insurance. Plaintiff calls it "guaranty" and the trial court calls it "perpetual forbearance." Indemnity is the idea pervading insurance of every kind. The indemnity here to be paid is the amount due on the notes at McLachlan's death. May, Insurance, §§ 7, 117; *Insurance Co.* v. *Bailey,* 13 Wall. 616.

It is admitted by plaintiff and found as a fact by the court that plaintiff has not complied with any of the laws of this state in reference to life insurance. Therefore, the contract cannot be enforced in this state and is void. *Solomon* v. *Dreschler,* 4 Minn. 278; *Ingersoll* v. *Randall,* 14 Minn. 400; *Bisbee* v. *McAllen,* 39 Minn. 143; *Rochester Ins. Co.* v. *Martin,* 13 Minn. 59.

MITCHELL, J. The plaintiff is a corporation organized under the laws of the state of Missouri. It does not appear what its nature is, except that it was organized for the purpose of pecuniary profit. It has never complied with any of the provisions of the laws of the

state respecting the transaction of life insurance business by foreign corporations in the state of Minnesota.

In June, 1890, the defendant Neil McLachlan made written application to plaintiff (apparently according to a form furnished by it) for a loan of $9,000, to be secured by mortgage on certain real estate owned by his wife and codefendant. This application contained the following:

"In consideration of the above premises I agree to execute and deliver to the said company promissory notes, each of the sum of $1,620, payable in monthly installments of $135, commencing at date of signing contract. The said notes cover principal sum loaned, interest, and cost of guaranty to cancel debt in case of death, and shall be secured by good and sufficient deed of trust or mortgage executed by myself and wife on said ground and improvements. The contract hereafter to be entered into, if my application should be accepted, and contract entered into in writing between myself and said company, shall provide that the mortgage or deed of trust given to secure the above notes shall contain a clause guarantying, in case of my death before payment of any unpaid installments, a release of unpaid portion of debt, if I shall have promptly paid previous installments and kept other conditions. As part of foregoing condition I agree, before acceptance of this application and the execution of said contract, to pass such medical examination as may be required by said company, and to pay said company the usual fee of $3.00 therefor, and to pay all fees for recording deed of trust or mortgage."

He passed the required medical examination, whereupon the plaintiff accepted his application, and made the loan of $9,000, and both defendants executed their promissory notes and a mortgage, in accordance with the conditions of the application. These notes (ten in number) were each for $1,620, payable in monthly installments of $135. The condition inserted in the mortgage, in accordance with the terms of the application, is set forth in the statement of the case.

The plaintiff thereupon obtained from the Prudential Life Insurance Company of Newark, N. J., a contract or policy indemnifying it for loss, if any, which it might suffer by reason of the death of Neil McLachlan during the life of the notes and mort-

gage; that is, within ten years from the date of their execution. The ordinary cost of carrying insurance for this amount and time on the life of a person of Neil's age was $852.91, which was known to plaintiff at the time it made the loan; and this was presumably the amount which it paid, or would have had to pay, to keep up the insurance.

The defendant paid the first nine monthly installments of $135, and then defaulted, whereupon the plaintiff exercised the option, given it by the terms of the mortgage, to declare the whole sum due, and commenced this action to recover judgment on the notes upon the foreclosure of the mortgage. It may be stated, although not material, that in its complaint plaintiff claimed, as to amount due it, only $10,260 and interest.

The defendants interposed the defense that the contract embodied in the notes and mortgages was void — *First,* because it was, in part at least, a contract of life insurance, and the plaintiff had not complied with the laws of this state relating to foreign insurance companies; and, *Second,* because, treating it as a contract to secure the payment of money loaned, it was usurious.

The plaintiff, both in its reply and here, expressly denies that the contract was one of life insurance, and insists that the consideration for the notes and mortgage was the $9,000 loaned, with legal interest, and the agreement to cancel and discharge, on the specified conditions, all of the debt still outstanding in case of Neil McLachlan's death before the maturity of the loan, that is, within ten years.

We had supposed that in the course of our professional and judicial experience we had met with about all the forms of contract which have been devised by the ingenuity of modern associations of this and similar kinds, but this one is entirely novel to us. It is certainly unique, and after a careful study of all its provisions it seems clear to us that it must have been contrived for the purpose of evading either the insurance laws or the usury laws, or both, of this state; but we shall take plaintiff at its word, and assume, without deciding, that it is not a life insurance contract, and hence that the laws of this state prohibiting and declaring invalid such contracts made by a foreign insurance company which has not complied with our statutes are inapplicable. It remains to be considered whether the facts justify the conclusion that the scheme was devised as a cover for usury. It was

on this ground that the trial court held the notes and mortgage void. The court found that the contract embodied in the notes and mortgage was usurious,—a cover for usury. This, it is true, is found among the conclusions of law; but it is really a finding of fact, and is none the less effective as such because called a finding or conclusion of law. *Cushing* v. *Cable*, 54 Minn. 6, (55 N. W. 736;) *Chase* v. *New York Mortg. Loan Co.*, 49 Minn. 111, (51 N. W. 816.) While the court, in the preface to its findings, recites that it had considered the "stipulated facts submitted," yet it nowhere appears that all the facts thus stipulated are contained in the findings. Therefore, in the absence of any case or bill of exceptions, it will be conclusively presumed that the finding that the contract was usurious was justified by the evidence, either stipulated or otherwise. This would require an affirmance; but the result must be the same even if we assume that all the evidence was in the form of stipulated facts, and is contained in the findings.

Construing the contract, as plaintiff insists it should be, as a loan of money with a guaranty of "perpetual forbearance," or for the return and cancellation of the outstanding notes in case of McLachlan's death within ten years, it seems to us that the peculiar provisions of the contract abundantly justify the finding that it was a mere device to enable the plaintiff to exact an unlawful rate of interest on the $9,000.

An arithmetical calculation will prove that the amount of the notes taken ($16,200), payable in monthly installments of $135, would when paid, far exceed $9,000 and ten per cent. interest, even after deducting the $852.91, the cost of the insurance against loss in case of McLachlan's death within the ten years. If this excess was not usurious interest, what was it intended to represent? Plaintiff's counsel contends that the whole of it merely represents the consideration for the agreement to return the outstanding notes upon McLachlan's death within the ten years, and argues that the risk of loss to it by reason of this agreement was not fully covered by the indemnity secured from the Prudential Life Insurance Company; but the facts would justify the court in finding that the conditions attached to the plaintiff's agreement to cancel the outstanding notes—for example, nonpayment of the monthly installments, suicide, visiting the torrid zone, engaging in certain extrahazardous occupations—

were intended to be exactly coincident with the conditions which a life insurance company would attach to its liability, and that plaintiff's risk, under its agreement with defendants, was intended to be, and was, fully covered by the life insurance, unless, perchance, the insurance company should become insolvent.

It is, of course, true, as counsel suggests, that usury is not to be presumed, but must be proved, and cannot be found on mere suspicion, however strong. But "proof" is merely that quantity of evidence which produces a reasonable assurance of the existence of the ultimate fact. The devices resorted to to cover usury are so numerous and various that direct and positive evidence is often not attainable; but the courts have never hesitated to pronounce a contract usurious whenever the circumstantial evidence, intrinsic or extrinsic, reasonably satisfied them that such was the fact. The peculiar and unusual provisions of this contract themselves constitute intrinsic evidence sufficient to justify the finding of the existence of every essential element of usury, viz. that there was a loan, that the money was to be returned at all events, and that more than lawful interest was stipulated to be paid for the use of it.

The only one of these which could be seriously claimed to be lacking was that the money was not to be paid at all events, but only upon a contingency, to wit, the continuance of the life of McLachlan; but the facts warrant the inference that this contingency was not bona fide, but was itself a mere contrivance to cover usury. The mere fact that the contract has the form of a contingency will not exempt it from the scrutiny of the court, which is bound to exercise its judgment in determining whether the contingency be a real one, or a mere shift and device to cover usury. The circumstances would justify a finding that the contingency in this case was merely a colorable device to cover usury.

Judgment affirmed.

(Opinion published 61 N. W. 560.)