## ALCO FINANCE CO. v. BARNES.

No. 21669. Opinion Filed July 19, 1932.

C. W. Van Eaton and Charles L. Roff, for plaintiff in error.

Evert M. Crismore, for defendant in error.

PER CURIAM. The defendant in error, as plaintiff below, filed action in the justice court against plaintiff in error, defendant below, for the recovery of $53, double the amount of usurious interest alleged to have been charged, and paid by the plaintiff upon a note executed for a loan of $50. Upon judgment being rendered for the plaintiff in the justice court, the matter was appealed to the district court of Oklahoma county, where the case was tried before the court, a jury being waived. The parties will be designated in this opinion as in the trial court.

No written pleading was filed by the defendant, and at the conclusion of the evidence and proof offered by the plaintiff, the defendant interposed a demurrer, which was overruled, and, the defendant electing to stand upon its demurrer, the court entered judgment for the plaintiff in the amount prayed for. Motion for new trial was filed and overruled, exceptions saved, and defendant appealed to this court, assigned error in overruling the motion for new trial, and error in overruling the demurrer to the plaintiff's evidence; however, plaintiff in error, in its brief, presents and argues only one assignment of error, stating as follows:

"Inasmuch as there is no question of the court being correct in overruling the defendant's motion for new trial if it was correct in overruling the demurrer to the evidence introduced by plaintiff, it is only necessary to consider this evidence in the light of the statutes and the decisions of courts to determine whether the same was sufficient upon which to base a judgment in favor of the plaintiff and against the defendant."

The assignment of error is briefed under three propositions, to wit:

"(1) Is the conditional obligation a usurious contract?

"(2) Is a genuine hazard incurred?

"(3) Does the conditional obligation bring the lender within the purview of the statutes regulating insurance companies?"

The uncontradicted evidence on the part of the plaintiff is to the effect that the plaintiff went with one M. M. Childress to the Alco Finance Company for the purpose of obtaining a loan, and upon executing notes and other instruments they did obtain $50 in money; that for the said $50 loaned, the defendant collected and the plaintiff paid the sum of $76.50; that the sum of $26.50 paid in addition to the principal sum of $50 borrowed is in excess of ten per cent. interest on the said $50. In the trial of the cause the defendant admitted that the Alco Finance Company was the proper defendant, and that defendant

was a loan company and not an insurance company. It is not denied, and, is in fact, conceded by the plaintiff in error, in its brief, that if the transaction constitutes a loan, excessive interest was charged, paid and received in the amount alleged; but it is contended that the transaction does not come within the purview of the usury statute by reason of the provision contained in the note in the form of a "conditional obligation."

The following instruments were introduced in evidence by the plaintiff, to wit:

"Conditional Obligation      50.00
"$76.50. Oklahoma City, Okla. May 17, '28      26.50
               ——————
               76.50

"1. For value received, undersigned maker promises to pay to the Eagle Money Co., or its assignee, at its office in this city, the sum of seventy-six 50/100 dollars, in 12 instalments of $6.50 each, and one last instalment of $6.50, the first instalment to be due and payable on May 26, 1928, and thereafter instalments to be due and payable on every other Sat. of each week after date of first instalment above mentioned, the last instalment to be due and payable on _____192___, provided, however, that if (while no instalment is in default) the undersigned maker shall, within the period from date hereof to due date of last instalment, involuntarily suffer either death by any cause, permanent and total physical disability by any cause, loss of a hand at or above the wrist or a foot at or above the ankle by any cause, irrecoverable loss of the sight of an eye by any cause, total loss or destruction by any cause of all his household furniture while at home address given below or damage to his household furniture exceeding fifty per cent. of total value thereof while at home address given below, caused by either fire, explosion, lightning, flood, tornado, cyclone, earthquake, riot, or war, then the whole or any part of this obligation remaining unpaid at that time shall not be payable at any time, and this obligation and any security taken to secure its payment shall be unenforceable.

"2. The undersigned maker hereby:

"(a) Represents and warrants, for the purpose of obtaining money on this obligation. that his total indebtedness, exclusive of this obligation does not exceed $_____;

"(b) Agrees that if any instalment is not paid on due date (and none of the events enumerated in paragraph 1 hereof shall have happened prior to the due date of defaulted instalment). then the entire balance of this obligation shall become due and payable immediately; and also agree to pay all costs and expenses incurred or expended in efforts to collect this obligation, including a reasonable attorneys fee;

"(c) Waives and renounces for self and family, all his homestead and exemption rights under the Constitution or laws of this state, any other state, or the United States, including a waiver of exemptions allowed under the United States bankruptcy laws,—such waivers being special inducements for this transaction;

"(d) Agrees that any provision of this obligation prohibited by the law of this state shall be ineffective to the extent of such prohibition only, without invalidating any other provision hereof. Home Address with street and city

"M. M. Childress, Undersigned Maker, M. M. Childress (seal) Signed in the presence of_____."

Also:

"Assignment of Salary or Wages.

"$76.50 Oklahoma City, Okla. May 17, '28.

"1. For value received, I hereby sell, transfer and assign to the Eagle Money Company (hereinafter called the purchaser) $_____ of salary or wages already earned by me up to and including _____ 192___ employed as, _____ by _____

"2. I hereby authorize and direct my said employer to pay the aforesaid amount to the purchaser, its representatives or assigns, upon presentation of this assignment; and when my employer shall have paid the aforesaid amount or any part thereof, in accordance herewith, I agree to accept this assignment as a receipt and voucher against me for the amount paid by me employer; and I hereby release and forever discharge my said employer from any and all liability whatsoever to me by reason of the payment of the aforesaid amount, or any part thereof, to the purchaser, its representatives or assigns.

"3. I hereby authorize the purchaser its representatives or assigns, in my name and stead and as my attorney in fact to sign any and all checks, vouchers, receipts, and acquittances necessary to collect the aforesaid amount or any part thereof, of my salary or wages from my employer, and to evidence payment of same.

"4. I hereby warrant and represent that I am over 21 years of age; that I am not indebted to my said employer; that my said employer owes me the aforesaid amount over and above all deductions; that I have not heretofore sold, assigned or otherwise disposed of the aforesaid salary or wages; and that there are no orders, garnishments or attachments outstanding affecting same in any way.

"5. I understand that this transaction is an absolute and unconditional sale of

the aforesaid amount of my salary or wages; that it is an original transaction and is not a renewal or extension of any kind, and has no connection with any other transaction I may have had with the purchaser prior to date hereof; and that the purchaser assumes all risk of loss that may now exist or hereafter arise on account of my said employer being or becoming insolvent or bankrupt. M. M. Childress (seal)"

Like instruments in blank executed by T. F. Barnes, the plaintiff, and H. C. Ramsey were also introduced. Receipts for the amount of $6.50 each, totaling $50, and signed by the Alco Finance Company were introduced in evidence, followed by oral testimony by the plaintiff as shown at page 15 of the case-made, and from which we here quote the material portion:

"Q. (By Mr. Crismore) You were forced to pay the balance of this note? A. I was. Q. They put in an assignment of this where you were working? A. Yes, sir. Q. Where? A. At the Ford Plant. The Court: How much did you pay? The Witness: I paid $70 even-up and he paid $6.50, which made $76.50. (By Mr. Crismore): Q. After you had paid these receipts, that balance there, how much was left to be paid according to their figures? A. $26.50. Q. Did you pay that? A. Yes, sir. Q. Is that when you got the receipts? A. Yes, sir. * * * Q. Did they give you these back? A. Not until we had argued around. Q. Who tore that corner off? A. Mr. Cobb. Q. What does that say? A. It says '$50,' and he put $26.50 underneath. Q. Did you get that little paper? A. I did. Q. From behind your contract? A. I made him hand it over. Q. All told on this note there was paid $76.50? A. Yes, sir."

Then on page 29 of the case-made.

"Q. (By Mr. Crismore): Was this the Eagle Loan Company you went to? A. No, sir; the Alco Finance. Q. Alco Finance was over the door? A. Yes, sir. Q. Did you go back afterwards? A. Yes, sir. Q. Has it always been there? A. Ever since I started paying any money. Q. Do you know how this Eagle Loan Company happened to be on the contract? A. No, I just found it out. Q. That was the contract you got? A. Yes, sir. * * * By the Court: You paid your money to the Alco Company, did you? A. Yes, sir; I paid my money to the Alco Finance and those are my receipts. * * * Q. (By Mr. Crismore): You were with Mr. Childress when he got this money? A. Yes, sir. Q. Was he particularly borrowing $50? A. With interest at ten per cent. Q. Was he up there borrowing $50, is that all he was there for? A. You mean—Q. (interrupting) Was Mr. Childress up there just to get $50? Was he up there to pay any insurance? A. No, sir; just borrow money. Q. How much? A. $50. Q. What was it purely a loan company? A. Alco Finance Company is all I

ever knew. Q. That was all he was doing, borrowing $50? A. Borrowing $50."

In support of the contention that the "conditional obligation" is not a usurious contract, plaintiff in error cites various cases from other jurisdictions in support of the general principle that, "to constitute usury, it is essential that the principal sum loaned be repayable at all events and not in hazard absolutely." "That the borrower shall promise to repay the principal in all events, regardless of any contingency." Plaintiff in error quotes from 27 R. C. L. p. 208, sec. 9, the applicable portion being as follows:

"The definition of usury imports the existence of certain essential elements. Though there is some slight dissent as to some of the elements named, they are generally enumerated as (1) * * * (2) * * * (3) an understanding between the parties, that the principal shall be paid absolutely; (4) the exaction of a greater profit than is allowed by law; (5) an intention to violate the law. The presence of these elements infallably indicates usury irrespective of the form in which the parties have put the transaction, and, on the other hand, the absence of any one of them conclusively refutes the claim that the parties have been guilty of any usurious practice."

Also, from 39 Cyc. 918-919, the material part of which is as follows:

"In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take, and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) * * * (3) * * * (4) The sum loaned must be absolutely, not contingently, repayable; (5) There must be an exaction for the use of the loan of something in excess of what is allowed by law. If all these requisites are found to be present, the transaction will be condemned as usurious, whatever form it may assume despite any disguise it may wear. But if any one of these requisites is lacking, the transaction is not usurious, although it may bear the outward mark of usury."

It is contended that the whole or any part of the amount stated in the "conditional obligation" is not repayable absolutely and at all events, for upon the happening of any one or more of the 15 contingencies enumerated in the conditional obligation, the whole or any part of the obligation remaining unpaid at that time shall not be payable at any time, and this obligation and any security taken to secure its payment shall be unenforceable; that therefore the obligation is a potential promise to pay a sum of money as distinguished

from an absolute promise to make such payments; that each of the contingencies named represent a real hazard such as is liable to happen to anyone, and that the happening of any one or more of the contingencies releases the borrower from any obligation to repay the whole or any part remaining unpaid at the time; that the contract cannot be classed as a shift used to evade the usury law; but plaintiff in error tacitly admits that it is one that may be used to avoid the usury law; and that while an evasion of the usury law is illegal, yet the United States Supreme Court has differentiated between avoidance and evasion, and held, in substance, that it is not illegal to avoid a law; citing United States v. Isham, 84 U. S. 496.

Plaintiff in error then extensively argues that the hazard incurred by the "conditional obligation" on the part of the defendant in error is a genuine hazard and not just trumped up contingencies, and that by reason thereof the conditional obligation is without the operation of the usury law. The remaining part of plaintiff in error's brief is practically all given over to the proposition of whether or not the conditional obligation brings the latter within the purview of the statutes regulating insurance companies; however, since it was contended by the plaintiff and admitted by the defendant that the defendant company was a loan company, and no issues raised on that question, the question of whether or not the "conditional obligation" comes within the purview of statutes regulating insurance companies is not pertinent in determining the issues involved, in the light of the facts and evidence, as disclosed by the record in this case.

Section 5098, C. O. S. 1921 [O. S. 1931, sec. 9513] provides, in part, as follows:

"The taking, receiving, reserving or charging a greater rate of interest than is provided by the preceding section shall be deemed a forfeiture of twice the amount of interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon."

This section of the statute defines what constitutes usury, and it would appear unnecessary to look further for a definition. In the instance case the proof clearly shows, "not only a taking, receiving, reserving or charging," but also the absolute forced payment of a greater rate of interest than is permitted by the statute. The trial court, in passing upon the transaction, had before it not only the "conditional contract" so many times referred to by the plaintiff in error in its brief, but also the unconditional assignment of salary and wages, which was, by the defendant, required to be executed and delivered by the borrower, as well as the uncontradicted oral testimony introduced by the plaintiff. Paragraph 5 of the assignment referred to reads in part as follows:

"I understand that this transaction is an absolute and unconditional sale of the aforesaid amount of my salary or wages; that it is an original transaction and is not a renewal or extension of any kind, and has no connection with any other transaction I may have had with the purchaser prior to the date hereof. * * *"

It was this assignment that the defendant used and not the "conditional obligation," and upon which it relied in making and forcing the final collection on the loan. In the event any of the contingencies happened as outlined in the conditional obligation, yet the defendant would not be prevented from relying upon the unconditional assignment.

In Fidelity Security Corp. v. Brugman, 1 P. (2d) 131, the Supreme Court of the State of Oregon held as follows (quoting from paragraphs 3 and 4 of the syllabus):

"Corrupt intent to take more than legal rate of interest is element of usurious contract.

"Taking what is in form mortgage note, without consideration except as additional interest upon note already bearing interest, would, as matter of law, evidence corrupt intent to take usurious interest."

And in the body of the opinion, it is stated:

"The defendants did not desire to purchase the Westmoreland property, and submitted to the plaintiff's demands as an extra consideration for the loan. It was a favor, premium, or inducement exacted by the plaintiff as a condition precedent so as to obtain a greater yield for the use of its money. Both notes were the fruits of the one intent. The two notes are united by the common intent. Had the defendants refused to purchase the Westmoreland property they could not have obtained the $16,000."

And in the instant case, had the plaintiff refused to execute the unconditional assignment he could not have obtained the $50 loan.

In 39 Cyc. 918, we find the following principle laid down:

"4. Evasion of Usury Laws. But if, from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the court will permit no scheme or device, however ingenious, to hide the face of usury."

And, in the words of Lord Mansfield in Floyer v. Edwards Cowp. 112, 114, 98 Eng. Reprint:

"Where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute."

In Case v. Fish, 58 Wis. 56, 15 N. W. 808, the appellate court held:

"A sum of money may be made absolutely repayable within the rule stated in the text without exacting a specific promise to repay. It may be so secured as never to be in hazard. If the principal sum is so secured and the interest is more than the law allows, it is usury." (39 Cyc. 943, footnote.)

In Missouri-Kansas & Texas Trust Co. v. Krumseig, 172 U. S. 351, cited by plaintiff in error in its brief, the contract in question was similar to the "conditional obligation" in the instant case, in that it provided:

"That in case the said Theodore M. Krumseig, one of the parties of the first part, should die after the execution and delivery of the said notes and this mortgage, and within ten years thereafter, each and every of said notes remaining unpaid at the said date shall be surrendered to the executors or administrators of the said Theodore M. Krumseig, * * * and this mortgage shall be canceled and satisfied; Provided, however, that said parties of the first part shall have promptly paid each monthly installment that shall have become due prior to his death according to the terms of the notes hereinabove mentioned. * * *"

In that case the answer denied that the contract was usurious, and alleged that the sum of $1,970, received by complainants with the legal interest thereon and the costs of the guaranty of defendant to cancel the mortgage in case of death of Theodore M. Krumseig during the continuance of the contract, constituted a full and ample consideration for the notes and mortgage in question. In passing upon the case the Circuit Court of Appeals used the following language (page 356):

"The precise character of the contract between the present parties is not clear. It has some of the features of a loan of money; in other respects it resembles a contract of life insurance. But our examination of its various provisions and of their legal import has led us to accept the conclusion of courts below, that the scheme embodied in the application, notes, and mortgage was merely a colorable device to cover usury."

In Missouri-Kansas & Texas Trust Co. v.

McLachlan, 59 Minn. 468, that court, in construing the provisions of the contract in connection with essential elements of usury, said, in part, as follows:

"The only one of these which could be seriously claimed to be lacking was that the money was not to be paid at all events, but only upon a contingency, to wit, the continuance of the life of McLachlan; but the facts warrant the inference that this contingency was not bona fide, but was itself a mere contrivance to cover usury. The mere fact that the contract has the form of a contingency will not exempt it from the scrutiny of the court, which is bound to exercise its judgment in determining whether the contingency be a real one, or a mere shift and device to cover usury."

In Vose v. U. S. Cities Corp., 152 Okla. 295, 7 P. (2d) 132, this court followed the principle of law laid down in Porter v. Rott, 116 Okla. 3, 243 P. 160, in the fourth paragraph of the syllabus:

"Where a claim is made that usury has been charged, and that the usurious charge is evidenced by a collateral agreement intended as a cloak for such usurious transaction, as, for instance, the charging of a commission by the lender, the questions as to whether such collateral agreement or such commissions were taken or reserved with the intent to charge a higher rate of interest than that allowed by law, and whether said transaction was a cloak or device to evade the law against usury, is a question of fact for the jury, or the court sitting as a jury."

And in Hobbs v. McGhee, 100 Okla. 210, 229 P. 240, this court held:

"In an action at law, a jury being waived, the judgment of the court has the same force and effect as the verdict of a jury, and if there is any evidence reasonably tending to support the judgment of the court, the judgment will not be disturbed by this court on appeal."

In this case the trial court, upon consideration of oral testimony in connection with the instrument introduced in evidence, to wit, the note termed a "conditional obligation," and the unconditional assignment, by its general findings, under the issues, necessarily found that the instruments constituted only a cloak for a usurious contract; and, there being evidence reasonably tending to support the judgment of the court, it will not be disturbed by this court on appeal. Judgment is affirmed.