EDNA SWAIN AND EMILY S. SEAMAN, EXECUTRICES OF THE LAST WILL AND TESTAMENT OF CLARA G. SWAIN, DECEASED, APPELLANTS-RESPONDENTS, v. AARON K. NEELD, TREASURER, STATE OF NEW JERSEY, ACTING AS DIRECTOR OF THE DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT-APPELLANT.

Argued September 23, 1958—Decided October 20, 1958.

*Mr. Joseph A. Jansen,* Deputy Attorney General, argued the cause for the respondent-appellant (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

*Mr. Fred Herrigel, Jr.,* argued the cause for the appellants-respondents (*Messrs. Herrigel, Bolan & Herrigel,* attorneys; *Mr. Joseph Ginsburg,* on the brief).

The opinion of the court was delivered by

BURLING, J.   This is an inheritance tax case.  Clara G. Swain died testate on February 13, 1956.  She was at the time of her death a resident of Union County, New Jersey.

Respondents are the executrices of the estate.  A transfer inheritance tax report, filed by them, revealed that on December 6, 1955 the decedent made *inter vivos* transfers, without consideration, of the value at the time of death of $42,630 of Standard Oil Company of New Jersey stock to members of her family.  These transfers of stock were made to the persons and in the amounts following:

| | | |
|---|---|---|
| Emily S. Seaman, daughter | 220 shares | $33,495 |
| Edna Swain, daughter-in-law | 20 shares | 3,045 |
| William E. Seaman, son-in-law | 20 shares | 3,045 |
| Virginia Swain, granddaughter | 20 shares | 3,045 |

The gross estate, excluding the above transfers, as of the date of death, amounted to $87,193.54.  The *quantum* of her estate immediately after the transfers and at the time of her death was substantially the same.

Respondents contended that the transfers were not taxable because they were not made in contemplation of death. After hearing, the examiner for the Division of Taxation found the gifts to be taxable. His findings read in part:

"The proofs do not satisfactorily establish clearly that the gifts are untaxable under the mandate of the Legislature as contemplated in the applicable statute, R. S. 54:34–1, nor do they appear to be clearly untaxable under the applicable rules laid down by our courts."

The applicable statute, *R. S.* 54:34–1(*c*) as amended, provides in part:

"A transfer by deed, grant, bargain, sale or gift made without adequate valuable consideration and within three years prior to the death of the grantor, vendor or donor of a material part of his estate or in the nature of a final disposition or distribution thereof, shall, *in the absence of proof to the contrary*, be deemed to have been made in contemplation of death within the meaning of paragraph 'c' of this section; but no such transfer made prior to such three-year period shall be deemed or held to have been made in contemplation of death." (Emphasis supplied)

The executrices prosecuted an appeal to the Superior Court, Appellate Division, contending (a) that the examiner erred in concluding that the burden of ultimate persuasion that the gifts were not in contemplation of death is upon the estate; (b) that the examiner erred in requiring as a standard of proof "satisfactorily establish clearly"; (c) that, assuming the burden of ultimate persuasion to be upon the estate, they satisfied the burden. The Appellate Division held that the statute *R. S.* 54:34–1(*c*) does not shift the burden of ultimate persuasion from the State—that it "merely casts upon the taxpayer the duty of going forward with evidence to rebut the presumption, *i. e.,* the duty of presenting *some* evidence tending to prove that the gift was not made in contemplation of death." That court further held that the examiner was in error in requiring a standard of proof beyond a preponderance of the evidence and remanded the cause for further determination in the Division. 49 *N. J. Super.* 523 (1958). We granted appellant's petition for certification. 27 *N. J.* 157 (1958).

■ Initially we note that the appellant on this appeal candidly concedes that, irrespective of where the burden of ultimate persuasion lies, that burden in inheritance tax cases is no greater than or different from the one ordinarily applicable to civil actions, *i. e.,* the burden of proving the ultimate facts in issue by a preponderance of the evidence. The examiner was clearly in error in substituting the standard "satisfactorily establish clearly." See *e. g., Montclair Trust Co. v. Zink,* 141 *N. J. Eq.* 401 *(Prerog.* 1948) ; *Kellogg v. Martin,* 130 *N. J. Eq.* 338 *(Prerog.* 1941).

The initial question raised is whether the statutory presumption operates to shift the burden of going forward with evidence or operates to shift the burden of ultimate persuasion by a preponderance of the evidence from the State to the taxpayer. The statutory language creating the presumption was first enacted in a 1922 amendment to the Transfer Inheritance Tax Act. *L.* 1922, *c.* 174.

A cleavage of opinion exists in our case law concerning the effect of the presumption. One line of cases, originating in the former Supreme Court, supports the view that the burden of ultimate persuasion shifts to the taxpayer. *Kunhardt v. Bugbee,* 3 *N. J. Misc.* 1107, 1108 *(Sup. Ct.* 1925) affirmed 4 *N. J. Misc.* 692 *(Sup. Ct.* 1926) ; *In re Sacks' Estate,* 101 *N. J. Eq.* 709, 712 *(Prerog.* 1927) ; *Perry v. Martin,* 125 *N. J. L.* 46, 49, 51 *(Sup. Ct.* 1940) ; *Barillet v. Kelly,* 131 *N. J. L.* 140, 143 *(Sup. Ct.* 1944). *Cf. Schweinler v. Martin,* 117 *N. J. Eq.* 67, 79, 86 *(Prerog.* 1934), affirmed 13 *N. J. Misc.* 722 *(Sup. Ct.* 1935). The other, originating in the former Prerogative Court, supports the view that only the burden of going forward with the evidence shifts. *Cairns v. Martin,* 130 *N. J. Eq.* 313, 328 *(Prerog.* 1941) ; *Squier v. Martin,* 131 *N. J. Eq.* 263, 272 *(Prerog.* 1942) ; *Fidelity Union Trust Co. v. Walsh,* 141 *N. J. Eq.* 181, 184–185 *(Prerog.* 1948) ; *First National Bank and Trust Company v. Zink,* 1 *N. J. Super.* 265, 268 *(App. Div.* 1949) ; *McManus v. Margetts,* 6 *N. J. Super.* 122, 127 *(App. Div.* 1950).

The question has never been passed upon by a court of last resort in this State.

Our primary quest is for legislative intent. In the absence of express language spelling out in detail the procedural effect to be given to the presumption, the intent is not readily ascertainable. Dean Wigmore, in analyzing the problem of when a presumption will operate to shift the burden of ultimate persuasion, rather than the burden of going forward with some competent legal evidence, has concluded: "The truth is that there is not and cannot be any one general solvent for all cases. It is merely a question of policy and fairness based on experience in the different situations." 9 *Wigmore on Evidence* (3rd ed. 1940), § 2486, at p. 275. See also *McCormick on Evidence,* § 318 (1954); *Ocean County National Bank v. Stillwell,* 123 *N. J. Eq.* 337 (*E. & A.* 1937).

Despite the absence of a firmly established standard to which reference may be had for a solution, we feel that there are a sufficient number of clues which, in their cumulative effect, lead to the conclusion that the legislative intent was to place upon the taxpayer the burden of proving by a preponderance of the evidence, that the gift was not in contemplation of death.

The focal phrase is "a transfer   *   *   *   shall, in the absence of proof to the contrary, be deemed to have been made in contemplation of death   *   *   *." The precise meaning of the word "proof" cannot be equated with the term "some evidence." Literally, proof is the legal effect of evidence. *United States v. Lee Huen,* 118 *F.* 442, 456 (*D. C. N. Y.* 1902); *Latikos v. State,* 17 *Ala. App.* 592, 88 *So.* 45, 47 (*Ct. App.* 1921). Proof is that amount of competent evidence sufficient to persuade a reasonable mind that the ultimate fact contended for is more probably true than not. See *e. g., Missouri K & T Trust Co. v. McLachlan,* 59 *Minn.* 468, 61 *N. W.* 560, 562 (*Sup. Ct.* 1894); 1 *Wigmore, supra,* § 29, at *pp.* 411–412; for a more complete collection of cases see 34 *Words and Phrases, Proof, p.* 577 *et seq.*

We are cognizant of the fact, however, that the word "proof" is not always employed in its precise sense and that the context may indicate that it was used as a synonym for the term "legal evidence." See *e. g., Tift v. Jones,* 77 *Ga.* 181, 3 *S. E.* 399 (*Sup. Ct.* 1887); *Walker v. State,* 138 *Ark.* 517, 212 *S. W.* 319, 325 (*Sup. Ct.* 1919); *Jaudel v. Schoelzke,* 95 *N. J. L.* 171, 177 (*E. & A.* 1920).

The respondents submit the statement of the introducer of the 1922 act creating the presumption as an indicator of the legislative intent. *Deaney v. Linen Thread Co.,* 19 *N. J.* 578, 584–585 (1955); *O'Rourke v. Board of Review,* 24 *N. J.* 607, 610 (1957). It reads, "A provision shifting the burden of proof from the State to the transferee in certain cases." Again, the phrase "shifting the burden of proof" is not without ambiguity in common usage. See *Wigmore, supra,* §§ 2485–2489. But a reading of the language utilized in the act together with the introducer's statement at least counterbalances the application of the ordinary approach to presumptions followed in this State, *i. e.,* shifting the burden of going forward with evidence. *In re Weeks' Estate,* 29 *N. J. Super.* 533, 538 (*App. Div.* 1954). The other indicia of intent tip the scales in favor of the position of the appellant, that the presumption was designed to shift the burden of ultimate persuasion. The contemplation of death provision was first enacted by amendment in 1906 (*L.* 1906, *c.* 228). After 16 years of administrative experience in the enforcement of the provision the statute was amended in 1922 to create the presumption. The amendment was a departmental bill, undoubtedly prompted by the pragmatic consideration that the State was seldom able to offer evidence that the gift was in contemplation of death. The salient facts to the inquiry are almost entirely in the possession of the taxpayer, and the witnesses are often interested parties. The creation of the presumption was in aid of achieving the policies of the contemplation of death provision which were to contain the evasion of inheritance taxes and promote equality of the incidence of the tax burden.

But in enacting the presumption the Legislature did not confine its bases to necessity and policy alone. Rather, it set forth conditioning basic facts which the State must prove by a preponderance of the evidence before the presumption arises. The State was required to show (1) a transfer, (2) of a material part of the estate, (3) without adequate valuable consideration, (4) within two (by amendment of *L.* 1951, *c.* 250, now three) years of death. Thus, the inferred fact, *i. e.,* contemplation of death, was also grounded in probability.

The effect to be afforded a presumption must ultimately lie in the reasons for its creation. Professor McCormick lists four bases for the erection of a presumption. These are (1) probability; (2) procedural convenience; (3) fairness in the allocation of the burden of producing evidence upon the party who has superior means of access to the proofs; (4) the fostering of social or economic policy. *McCormick on Evidence,* § 309, *p.* 641. The statutory presumption under consideration here is grounded in probability, fairness and policy. It is worthy of note that *rule* 14 of the *Uniform Rules of Evidence* takes the position that a presumption rooted in probability ought to operate to shift the burden of ultimate persuasion. The adoption of this theory was recommended by both the Supreme Court Committee, *Report of the Supreme Court Committee on the Revision of the Law of Evidence, p.* 26 (1955), and the Legislative Commission, *The Report of the Commission to Study the Improvement of the Law of Evidence, p.* 23 (1956). We are not called upon to pass on that question in this proceeding, and in mentioning it we do not mean to express any views on it. For a general discussion, see *Morgan, Presumptions,* 10 *Rutgers L. Rev.* 512 (1956).

Suffice it to say that in this instance the language utilized, the introducer's statement, and the fact that the presumption is grounded not only in probability but in fairness and policy as well, cumulatively compel the result that the Legislature intended to shift the burden of ultimate persuasion from

the State to the taxpayer where the transfer was made within the specified period.

This conclusion has also been reached in sister states where similar statutory provisions were involved. Thus, where the statute reads that a transfer shall be deemed to be in contemplation of death "unless shown to the contrary" it has been held that such a provision operates to shift the burden of ultimate persuasion to the taxpayer. *In re Estate of Walker,* 161 *Ohio St.* 564, 120 *N. E.* 2d 432 (*Sup. Ct.* 1954), Comment 15 *Ohio St. L. J.* 486 (1954); *In re Dreyer's Estate,* 153 *Misc.* 624, 275 *N. Y. S.* 839 (*Surr. Ct.* 1934).

We come then to the question of the test for determining when an *inter vivos* transfer of property is made in contemplation of death. The statute does not further define the phrase. We therefore look to the legislative history and purpose and to the plethora of judicial decisions in this State construing the statute.

The original Inheritance Tax Act in this State was enacted in 1892 (*L.* 1892, *c.* 122, *p.* 206) and created a tax on the privilege or right of succeeding to property, either by testate or intestate distribution, or by *inter vivos* transfers intended to take effect in possession or enjoyment at the death of the transferor. The Legislature, thus, early recognized that *inter vivos* transfers, the classic example of which is an *inter vivos* trust with an estate for life in the settlor and remainder to the natural objects of his bounty, may be the substantial equivalent of a testate or intestate distribution. It is probable that 14 years of experience in the enforcement of the Transfer Inheritance Tax Act revealed that dispositions which are in essence testamentary in nature might also be achieved by means of absolute and unqualified *inter vivos* gifts. This situation likely provided the legislative impetus for the amendment to the Inheritance Tax Act of 1906 imposing a tax upon transfers made "in contemplation of * * * death" (*L.* 1906, *c.* 228, *p.* 433). For a discussion of the history of the transfer inheritance tax see *Renwick v. Martin,* 126 *N. J. Eq.* 564 (*Prerog.* 1939); *Schweinler v. Martin, supra.* The obvious purpose of the

contemplation of death provision was to tax those *inter vivos* transfers of property which were, in substance, substitutes for testamentary dispositions, *e. g., In re Bottomley's Estate,* 92 *N. J. Eq.* 202, 207 (*Prerog.* 1921); *In re Perry's Estate,* 111 *N. J. Eq.* 176, 181–182 (*Prerog.* 1932); *Schweinler v. Martin, supra; Perry v. Martin, supra; Cairns v. Martin, supra; Squier v. Martin, supra; Avery v. Walsh,* 138 *N. J. Eq.* 80 (*Prerog.* 1946). And see *United States v. Wells,* 283 *U. S.* 102, 51 *S. Ct.* 446, 75 *L. Ed.* 867 (1931). As the cited cases indicate, the emergent adjudicative problem was to distinguish between *inter vivos* transfers which were gifts and *inter vivos* transfers which were substitutes for testamentary dispositions. Both benefactions purport to grant to the donee an absolute and present title to the property transferred. The objective indicia are the same. The differentiating factor is the subjective state of mind of the transferor—his motivation in making the gift. The problem of discerning the donor's intent is complicated by the added factor that he is often motivated by two or more reasons for making a gift. He may, indeed often does, derive satisfaction from the fact that the object of his bounty will have the *ante mortem* use and enjoyment of it. See *Paul, Federal Estate and Gift Taxation,* § 606, *p.* 256 (1942). But irrespective of the existence of any life associated motives, it is sufficient to create a gift in contemplation of death if an impelling motive exists to make a present disposition in lieu of a testamentary disposition. See *Cairns v. Martin, supra,* 130 *N. J. Eq.* at *page* 324. The act was aimed equally at preventing the evasion of inheritance taxes and at assuring an equality of the incidence of the tax burden. *Perry v. Martin, supra; Newberry v. Walsh,* 20 *N. J.* 484, 491 (1956). While a purpose to evade taxes may be the determinative in a given case, it is not a *sine qua non* to taxability. A transferor devoid of any thought of escaping inheritance taxes may nonetheless be motivated by a desire to make an essentially testamentary disposition of his property.

Among the contrariety of phraseology of judicial opinions on the point, the contemplation of death test devised by Judge Jayne in *Avery v. Walsh, supra,* 138 *N. J. Eq.* at *page* 84, is appealing:

"Where an *inter vivos* gift is, as a result of considered choice, intentionally made in the place and stead of a testamentary disposition, it is taxable. The substance of the transfer rather than the form controls. * * * And so, realizing that taxation is a practical matter, it will be efficient 'to put in contrast on the one side the substance and practical effect of what was actually done, and on the other the import and design of the terms of the taxing statute.' * * * As stated by the late Chief Justice Stone in *Helvering v. Horst*, 311 *U. S.* 112, 118, 61 *S. Ct.* 144, 85 *L. Ed.* 75: 'Common understanding and experience are the touchstones for the interpretation of the revenue laws.' "

▉ The task of the fact finder is to carefully consider and weigh all of the surrounding circumstances shedding light on the decedent's intent, bearing in mind that quite often the only available witnesses are interested parties. Relevant factors to be considered, as attested by the cases, include, but are not limited to: the age and general condition of health of the donor at the time of making the gift; the time interval between the *inter vivos* transfer and death; the existence of a desire to evade inheritance taxes; whether or not the *inter vivos* transfer was part of a testamentary scheme or plan; past history of substantial gifts by the donor; whether or not the gift was made to the natural objects of the donor's bounty; whether or not there existed an emergency situation which may have prompted the donation (*e. g.,* donee's illness requiring large expenditures).

▉ The parties concede that no additional evidence is available in the present controversy and have requested this court to finally dispose of the factual facet of the case rather than remand it to the Division for further determination. Since all of the available evidence is contained in the present record, we shall dispose of the factual issue of whether the respondents have sustained their burden of proving by a preponderance of the evidence that the transfers were not made in contemplation of death. *R. R.* 1:5–4(*b*).

Clara Swain was, at the time of the transfers in question, 87 years of age. The transfers included roughly one-third of her accumulated fortune and were made just two months prior to her death. She had never before made such substantial gifts to her family.

Mrs. Swain had suffered from arteriosclerotic heart disease and hypertension. The testimony adduced indicated that these ailments were not uncommon for a person of her years. She was described as being mentally alert. In April of 1955 she had suffered a cerebral vascular spasm resulting in the loss of her right arm for several days. The death certificate, made out by her physician, listed a coronary thrombosis as the immediate cause of death, with arteriosclerotic heart disease and hypertension listed as contributing causes. Until about two years prior to her death Mrs. Swain had resided with a brother and sister. Upon the death of her sister she moved into her daughter's home residing there until her death. She contributed $15 per week towards her food expenses. In the summer of 1955 Mrs. Swain indicated to her daughter, Emily S. Seaman, that she wanted to transfer some of her Standard Oil of New Jersey stock to Mrs. Seaman, Mrs. Edna Swain, her daughter-in-law (her son had died in 1935), and to her granddaughter, Virginia Swain (Edna Swain's daughter). The deceased indicated that, since her expenses were considerably reduced because she was living with her daughter, she could exist on less money and was in a position to make substantial gifts. At this juncture in the factual narrative we pause to interject what we deem an appropriate hypothetical case related in the case of *Schweinler v. Martin, supra,* 117 *N. J. Eq.* at *pages 77, 78*:

"Suppose, however, his [the transferor's] contemplation be thus: "I'm getting on in years, I'm over seventy. I come of a long-lived family, and it's quite possible that I may live for ten or fifteen years longer. Still, I *may* not last that long, and it is certain that I'm going to die eventually, and when I do, my property will go to my children. I want them to have it. I would be glad for them to have it, or at least some of it, now. I would give it to them now, if I could be sure I'd have enough to take care of myself

properly for the rest of my life. Well, I can be sure of that,—I'll give them two-thirds and keep one-third,—that will be enough," and he therefore makes the gift. His contemplation of death was just as surely the impelling cause or motive for the gift in this instance as in the other. The gift comes as squarely within the language of the statute in this instance as in the other, and the gift is of the nature or type which it was the Legislature's general object or design to tax the transfer of a man's property, when he was through with it, to his successors or other chosen beneficiaries just as surely as in the other instance."

It may well be that, as the witnesses testified, Mrs. Swain was motivated in part by a desire to see her daughter, son-in-law, daughter-in-law and grandchild financially independent and secure. Moreover, her granddaughter was planning marriage and she desired to give her a "nest-egg." (It should be noted that, because of the statutory exemption, the gift to the granddaughter was not taxed.) But, as we have previously indicated, such motivations are not fatal to a finding that the gifts were made in contemplation of death where there also exists an impelling motive that the transfer be in lieu of a testamentary disposition.

In our view the dispositive fact in the instant case is that just three weeks prior to her death the decedent executed a new will (the one eventually probated) which took into account the *inter vivos* transfers and which clearly indicated that those transfers were part of a general testamentary scheme. By the terms of a will made long prior to the transfers she left her residuary estate in equal shares to her daughter and daughter-in-law. Shortly after the transfers decedent directed that the new will be drawn. The new will provided for a general legacy of $30,000 to her daughter-in-law with the residue to be shared equally by the daughter and daughter-in-law. The *inter vivos* gift to the daughter was valued at the time of death at $33,495. If we add to this the $3,045 transferred to her son-in-law, that branch of the family received $36,540. The gifts to the daughter-in-law and granddaughter amounted to $6,090. Thus it can be readily seen that the $30,000 general legacy to the daughter-in-law was intended to equalize the distribution of the estate

in accordance with the decedent's general testamentary plan of one half to each branch of the family. The correction of the will to correlate with the *inter vivos* transfers requires a conclusion that the transfers were the result of a considered choice to make a present gift in lieu of a testamentary disposition. The respondents have failed to sustain the burden of proving by a preponderance of the evidence that the gifts were not made in contemplation of death.

The judgment of the Appellate Division is reversed and the judgment entered in the Division of Taxation shall be reinstated.

WACHENFELD, J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.