CRABTREE, J. T. C.
Plaintiffs seek a refund of inheritance tax paid with respect to certain inter vivos transfers made by decedent within three years of his death. Defendant claims that the transfers were subject to tax as having been made in contemplation of death within the purview of N.J.S.A. 54:34-l(c).
Argiris Fantis died testate at the age of 81 on July 5, 1972, a resident of Fort Lee, New Jersey. His gross estate, including the disputed transfers, was valued at $2,516,778. The date-of-death value of the assets involved in the disputed inter vivos transfers was $923,624, or 36.7% of decedent’s gross estate.
*142 The subject of the transfers was publicly-traded securities, and the objects of decedent’s benefactions were his nephews George Makris and Milton Makris, and Milton Liberty, the husband of his niece Marie Liberty. The values of the gifts and the dates thereof were:
To George Makris - $356,950 on July 6, 1970
123,317 on August 31, 1970
117,673 on September 11, 1970
To Milton Makris - $128,345 on July 6, 1970
To Milton Liberty - $146,734 on September 1, 1970
50,603 on June 28, 1972
Decedent’s will, executed on April 24, 1969, left 25% of his residuary estate to George Makris, a like portion to Milton Makris, 7'/2% to Marie Liberty, 127:% to another niece, Irene Magafan, and the remaining 30% to various religious and charitable institutions. The will also made explicit reference to lifetime gifts and declared that “I have made such gifts in order to give the beneficaries the present enjoyment of the said gifts and not in contemplation of death.”
Decedent, from about 1962 until his death, suffered from hypertension and arteriosclerotic heart disease, ailments which were progressive and incurable. He was also afflicted in the same time period with dizziness due to labyrinthitis and cerebral insufficiency, high blood pressure, tracheitis, vertigo and urinary obstruction. On February 6, 1970 a physician’s examination of decedent revealed a slow heart beat, which eventuated in decedent’s hospitalization and the installation of a pacemaker. Both decedent and his nephews and nieces were advised of his general condition and its gravity.
Although decedent, a food import merchant, never married, he regarded his nephews and nieces as his surrogate family, with whom he maintained a close and loving relationship for many years. In the 1950s he arranged for the entry into the United States from Greece of George and Milton Makris and their two sisters, Marie Liberty and Irene Magafan. These nephews and nieces, children of decedent’s sister, had lost their father at an *143 early age. Both George Makris and his brother Milton lived with their uncle, first in Brooklyn, New York, then in Fort Lee, New Jersey. Milton made his home with his uncle until the latter’s death. Both nephews worked in their uncle’s business. Marie Liberty also lived with her uncle periodically.
In 1968, when decedent retired from active participation in his business, Milton Liberty, at decedent’s request, left his employment and came to live with decedent as the latter's full-time companion. At least from this point onward, if not before, Liberty was a member of decedent’s close family circle and became a natural object of decedent’s bounty.
During the years 1967, 1968 and 1969 decedent made inter vivos gifts to his nieces and nephews and to Milton Liberty, aggregating approximately $3.4 million (including audit adjustments made by Internal Revenue Service to values reported on federal gift tax returns).
The relevant statute, N.J.S.A. 54:34-l(c), provides:
Where real or tangible personal property within this State of a resident of this State or intangible personal property wherever situate of a resident of this State or real or tangible personal property within this State of a non-resident, is transferred by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death.
A transfer by deed, grant, bargain sale or gift made without adequate valuable consideration and within 3 years prior to the death of the grantor, vendor or donor of a material part of his estate or in the nature of a final disposition or distribution thereof, shall, in the absence of proof to the contrary, be deemed to have been made in contemplation of death within the meaning of paragraph “c” of this section: but no such transfer made prior to such 3-year period shall be deemed or held to have been made in contemplation of death.
The statute creates a presumption that a gift made within three years of the donor’s death of a material part of his estate is a transfer in contemplation of death. To rebut this presumption the taxpayer must prove by a preponderance of the evidence that the gift was not so made. Swain v. Neeid, 28 N.J. 60, 145 A.2d 320 (1958); In re Lichtenstein Estate, 52 N.J. 553, 247 A.2d 320 (1968). Irrespective of the existence of any life-associated motives, it is sufficient to create a gift in contemplation of death if an impelling motive exists to make a present disposition in lieu of a testamentary disposition. Id. at 569, 247 A.2d *144 320. Whether a donative transfer is a testamentary substitute depends upon the donor’s subjective state of mind at the time of the transfer, and that state of mind is a question of fact as to which the taxpayer has the burden of persuasion, to be ascertained by reconstruction by means of objective indicia. Id. at 569, 247 A.2d 320.
The factors to be examined in aid of ascertaining the donor’s state of mind include his age and general physical condition, whether the lifetime transfers were part of a testamentary scheme or plan, past history of substantial gifts and whether the gifts were made to the natural objects of decedent’s bounty. Swain v. Neeld, supra 28 N.J. at 70, 145 A.2d 320.
I find from the credible evidence in the record that the disputed transfers (i.e., those made in 1970 and 1972) were intended by decedent as substitutes for a testamentary disposition and that those transfers were actuated by an impelling motive. The transfers made in 1970 and 1972 constituted a material part (36.7%) of decedent’s estate; decedent was a man of advanced years and failing health; the donees were the natural objects of decedent’s bounty as reflected not only by provisions made for them in his will but also by the substantial gifts bestowed upon them in 1967, 1968 and 1969. That the gifts were part of a comprehensive testamentary scheme is memorialized by decedent’s own testamentary declaration to the effect that lifetime gifts were made to give the donees the present enjoyment thereof. Indeed, this declaration discloses that decedent was only concerned with when gifts were made, not whether they would be made, a circumstance compelling the conclusion that the gifts were made in contemplation of death. Schweinler v. Thayer-Martin, 117 N.J.Eq. 67, 175 A. 71 (Prerog. 1934), aff’d 13 N.J.Misc. 722, 180 A. 774 (Sup.Ct.1935). If the donor makes only a choice of whether to make a gift to a specified donee, not when to make it, the transfer will not be deemed made in contemplation of death. Where, however, the donor is only concerned with when to make gifts to certain donees, not whether to make them, the gifts are made in contemplation of death. Id. at 97-98, 175 A. 71.
*145 Plaintiffs attempt to show, by means of sophisticated computational legerdemain, that saving death taxes was not within decedent’s contemplation when he made the gifts because, according to plaintiffs’ demonstration, the federal estate tax was actually greater as a result of the inter vivos gifts. Quite apart from the dubious quality of the assumption underlying plaintiffs’ calculations, there is no evidence that this state of affairs was made known to the decedent or that it influenced his conduct. As indicated above, the donor’s subjective state of mind at the time of the gift is determinative. Further, while a purpose to minimize taxes may, under some circumstances, be important, it is not a sine qua non of taxability. A donor, devoid of any thought of escaping death taxes, may nonetheless be motivated by a desire to make an essentially testamentary disposition of his property. Swain v. Neeld, supra 28 N.J. at 69, 145 A.2d 320.
Finally, plaintiffs cite and discuss a number of federal estate tax cases involving the contemplation of death issue. Suffice it to say that those cases are not persuasive as it is New Jersey precedents, not federal decisions, that control. The governing principles are different. In re Lichtenstein Estate, supra 52 N.J. at 570, 247 A.2d 320.
Judgment will be entered denying plaintiffs’ claim for refund.